*COPY*
*1*

DEC 28 2000

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

FORM FOR USE IN APPLICATIONS FOR HABEAS CORPUS UNDER 28 U.S.C. §2254

(EFF.10/18/96)

JAMES SAMPLE                    **1: CV-0** BW-0660 **0038**
Name                                          Prison Number

S.C.I.FRACKVILLE 1111 ALTAMONT Blvd.          FILED
Place of Confinement                          SCRANTON
            FRACKVILLE, PA.17931

                                              JAN 1 ? 2001

JAMES SAMPLE                                                    PETITIONER
(Full Name Include Name Under Which you were Convicted )   DEPUTY CLERK

        vs.                    CASE NO. _____
                                          (Supplied by the Court)

JOSEPH W. CHESNEY                                              RESPONDENT
(Name of Warden, Superintendent, Jailer, or authorized person having custody of Petitioner)

                            and

THE DISTRICT ATTORNEY THE COUNTY OF  PHILADELPHIA _____

                            and

THE ATTORNEY GENERAL OF THE STATE OF  PENNSYLVANIA _____
                                              ADDITIONAL RESPONDENT


            (If petitioner is attacking a judgement which imposed a sentence to be served in the
            future, petitioner must fill in the name of the state where the judgement was entered.
            If petitioner has a sentence to be served in the future under Federal judgement which
            he wishes to attack, he should file a motion under 28 U.S.C. §2255, in the Federal
            Court which entered the judgment.)

        PETITION FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY

                    INSTRUCTIONS - READ CAREFULLY

1.      This petition must be legibly handwritten or typewritten and signed by the petitioner . Any false statement
        of a material fact in this petition or in a motion for leave to proceed in forma pauperis may serve as the
        basis for prosecution and conviction for perjury. All questions must be answered concisely in the proper
        space on the form. Where more room is needed to answer a question use reverse side of sheet.

2.      Additional pages are not permitted. No citation of authorities need be furnished.  If briefs or arguments are
        submitted, they should be submitted in the form of a separate memorandum.

3.      Upon receipt of a fee of $5.00, your petition will be filed if it is in proper order

4.    If you do not have the entire necessary filling fee, you may request permission to proceed in forma pauperis, in which event you must complete the forms on the pages eleven and twelve, setting forth information establishing your inability to prepay the full fees and cost or give security therefor. If you wish to proceed in forma pauperis, you must submit an affidavit stating all your assets , and the certification on page thirteen , signed by an authorized prison official. Discharge of debt in a bankruptcy proceeding shall not include a filling fee ( or associated cost and expenses) , regardless of an assertion of poverty by the debtor or the debtor's status as a prisoner.

5.    Only judgements entered by one court may be challenged in a single petition. If you seek to challenge judgements entered by different courts either in the same state or in different states, you must file separate petition as to each court.

6.    Your attention is directed to the fact that you must include all grounds for relief and all facts supporting such grounds for relief in the petition you file seeking relief from any judgement of conviction.

7.    All state remedies must be exhausted before filing a claim under 28 U.S.C. §2254, however, if a prisoner files such a claim before exhausting all state remedies, the federal court has no authority to deny it on its merits. A federal court, when considering a state prisoner habeas corpus petition, must deem as correct a determination of a factual issue made by a state court, unless the prisoner's rebuts the presumption by clear and convincing evidence. If a petitioner has failed to develop the factual basis of the claim in the state court proceeding, a federal court shall not hold an evidentiary hearing on a habeas corpus claim unless the prisoner shows that:

       (1)    The claim relies on either a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable, or a factual predicate that could not have previously been discovered through the exercise of due diligence; and

       (2)    The facts underlying the claim be sufficient to establish by clear and convincing evidence that but for the constitutional error, no reasonable factfinder would have found the prisoner guilty.

8.    There is a one year statute of limitations for filing petitions pursuant to 28 U.S.C. 2254.

9.    Federal courts must dismiss claims in a second or successive petition that were presented in a prior petition.

10.   Federal courts must dismiss claims in a second or successive petition that were not presented in a prior petition unless:

       (1)    The claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

       (2)    The factual predicate for the claim could not have been discovered previously through the exercise of due diligence, and the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the petitioner guilty.

              Before such a second or successive petition may be filed in the district court, however, the petitioner must move the court of appeals for an Order authorizing the District Court to consider the petition. Petitioner's motion for such an order must be determined by a three judge panel of the court of appeals, which must grant or deny the motion within 30 days. The court of appeals may grant the motion only if it determines that the petition makes a prima facie showing that it satisfies either (1) or (2) above.

11    Ineffectiveness of counsel during post-trial proceedings in state court shall not be grounds for relief under 28 U.S.C. 2254.

12.   When the petition is fully completed, the original and four copies must be mailed to the Clerk of the United States District Court, whose address is the William J. Nealon Bldg. & U.S.Courthouse.235 N. Washington Ave. P.O. Box 1148 Scranton, Pennsylvania 18501.

13    Petitions which do not conform to these instructions will be returned with a notation as to the deficiency.

**PETITION**

1. (a) **Name and location of court which entered the judgment of conviction under attack:** Court of Common Pleas of Philadelphia County

   (b) **Name of Prosecutor:** Lynn Abraham, Esquire

   (c) **Prosecution conducted by District Attorney's Office of** Philadelphia **County**

2. (a) **Date of Judgment of conviction:** June 12, 1992

   (b) **Indictment number or numbers:** _____

   **Term:** May, 1991    **Criminal Case Number:** 1745

3. **Length of sentence:** Life Imprisonment **Sentencing Judge:** Richette

4. **Nature of offense or offenses for which you were convicted:**

   murder 1st degree; criminal conspiracy, intimidation of witness and

   terroristic threats.

5. **What was your plea? (check one)**
   **(a) Not Guilty** (x)    **(b) Guilty ( )**    **(c) Nolo contendere ( )**
   **If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, give details:** _____

   _____

   _____

6. **Kind of trial: (check one)**
   **(a) Jury** (x)    **(b) Judge only ( )**

7. **Did you testify at the trial?  Yes ( )  No ( )**

8. **Did you appeal from the judgment of conviction?**
   **Yes (x) No ( )**

9. **If you did appeal, answer the following:**

   **(a) Name of court:** SUPERIOR COURT OF PENNSYLVANIA

   **(b) Result:** JUDGMENT OF SENTENCE AFFIRMED

   **(c) Date of Result:** June 6th 1994

If you filed a second appeal or filed a petition for certiorari in the Supreme Court, give details: On 4/11/95 allow.

of appeal petition was denied in Penna. Supreme Court.

**10. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions with respect to this judgment in any court, state or federal?**

Yes (x)        No ( )

**11. If your answer to 10 was "yes", give the following information:**

(a) (1) **Name of Court:** Court of Common Pleas of Philadelphia County

(2) **Nature of proceeding:** Post Conviction Relief Act

_____

(3) **Grounds raised:** Petitioner was denied of his right to due

process of law, where the prosecuting attorney not only allowed false testimony, but also perjurious witness; inter alia

_____

(4) **Did you receive an evidentiary hearing on your petition, application or motion?**

Yes ( )        No (x)

(5) **Result:** PCRA petition dismissed

_____

_____

(6) **Date of result:** January 9, 1998

(b) **As to any second petition, application or motion give the same information:**

(1) **Name of Court:** _____ N/A _____

(2) **Nature of proceeding:** _____

_____

(3) **Grounds raised:** _____

_____

N/A

    **(4) Did you receive an evidentiary hearing on your petition, application or motion?**
           **Yes ( )     No (X)**

    **(5) Result:** _____

_____

_____

    **(6) Date of result:** _____

    **(c) As to any third petition, application or motion, give the same information:**

        **(1) Name of Court:** _____ N/A _____

        **(2) Nature of proceeding:** _____

        **(3) Grounds raised:** _____

_____

_____

    **(4) Did you receive an evidentiary hearing on your petition, application or motion?**
         **Yes ( ) No ( )**

    **(5) Result:** _____

    **(6) Date of Result:** _____

    **(d) Did you appeal to the highest state court having jurisdiction the result of any action taken on any petition, application or motion:**
        **(1) First petition, etc.**         **Yes (xx) No ( )**
        **(2) Second petition, etc.**      **Yes ( ) No ( )**
        **(3) Third petition, etc.**       **Yes ( ) No ( )**

    **(e) If you did _not_ appeal from the adverse action on any petition, application or motion, explain briefly why you did not:**

_____

_____

_____

12. State concisely every ground on which you claim that you are being held unlawfully. Summarize briefly the facts supporting each ground.

CAUTION: In order to proceed in the federal court, you must ordinarily first exhaust your state court remedies, you should set them forth in this petition if you wish to seek federal relief. If you fail to set forth all such grounds in this petition, you may be barred from presenting them at a later date.

For information, the following is a list of the most frequently raised grounds for relief in habeas corpus proceedings. Each statement preceded by a letter constitutes a separate ground for possible relief. You may raise any grounds which you may have other than those listed if you have exhausted all you state court remedies with respect to them. However, you should raise in this petition all available grounds (relating to this conviction) on which you base your allegations that you are being held in custody unlawfully.

If you select one or more of these grounds for relief, you must allege facts in support of the ground or grounds which you choose. Do not check any of the grounds listed below. The petition will be returned to you if you merely check (a) through (j) or any one of these grounds.

(a) Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily with understanding of the nature of the charge and the consequences of the plea.

(b) Conviction obtained by use of coerced confession.

(c) Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure, (where the state has not provided a full and fair hearing on the merits of the Fourth Amendment claim).

(d) Conviction obtained by use of evidence obtained pursuant to an unlawful arrest, (where the state has not provided a full and fair hearing on the merits of the Fourth Amendment claim).

(e) Conviction obtained by a violation of the privilege against self-incrimination.

(f) Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.

(g) Conviction obtained by a violation of the protection against double jeopardy.

(h) Conviction obtained by action of a grand or petit jury which was unconstitutionally selected and impaneled.

(i) Denial of effective assistance of counsel.

(j) Denial of right of appeal.

A. Ground one: PETITIONER'S CONVICTION VIOLATES THE 5TH AMEND. DOUBLE JEOPARDY CLAUSE DUE TO PROSECUTORIAL MISCONDUCT

Supporting FACTS (tell your story briefly without citing cases or law):

See, attached Memorandum of Law

**B. Ground two:** INTROSUCTION OF HEARSAY TESTIMONY DENIED THE
PETITIONER OF HIS RIGHT TO A FAIR AND IMPARTIAL TRIAL

**Supporting FACTS (tell your story briefly without citing cases or law:**
See, attached Memorandum of Law

**C. Ground three:** PETITIONER WAS DENIED OF A FAIR TRIAL BECAUSE
THE PROSECUTION ENGAGED IN A PATTERN OF MISCONDUCT

**Supporting FACTS (tell your story briefly without citing cases or law:**
See, attached Memorandum of Law

**D. Ground four:** PETITIONER WAS DENIED OF A FAIR TRIAL DUE TO
THE INTRODUCTION OF PERJURED TESTIMONY

**Supporting FACTS (tell your story briefly without citing cases or law:**
See, attached Memorandum of Law; ADDITIONALLY, see Grounds
E thru L in attached memorandum of law.

13. If any of the grounds listed in 12A, B, C, and D were not previously presented in any other court, state or federal, state briefly what grounds were not so presented, and give your reasons for not presenting them:

All issues (A-L) have been exhausted via state remedies

14. Do you have any petition or appeal now pending in any court, either state or federal, as to the judgment under attack?
Yes ( )   No (x)

15. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:
(a) At preliminary hearing:   Brian J. McMonagle, Esquire

(b) At arraignment and plea:   Brian J. McMonagle, Esquire

(c) At trial:   Brian J. McMonagle, Esquire

(d) At sentencing:   Brian J. McMonagle, Esquire

(e) On appeal:   Brian J. McMonagle, Esquire

(f) In any post-conviction proceeding:
JAMES CAMMENDALA   ESQUIRE

(g) On appeal from any adverse ruling in a post-conviction proceeding:
Pro Se Appellant

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?   Yes ( )    No (x)

17. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?
        Yes ( )    No (x)

        (a) If so, give name and location of court which imposed sentence to be served in the future:

_____

_____

        (b) And give date and length of sentence to be served in future:

_____

        (c) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?        Yes ( )  No ( )


        I declare under penalty of perjury that the foregoing is true and correct.

Executed on _____    _James Sample_____
                                        **Signature of Petitioner**


        Pro Se Petitioner
_____
    **Signature of Attorney (if any)**


See, attached Memorandum of Law

Wherefore, petitioner prays that the Court grant petitioner relief to which he may be entitled in the proceeding.

*PRO Se PETITIONER*
Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct.

*James Sample*
Signature of Petitioner

Executed on: the _20_ day of _DECEMBER_ , _2000_ .

*PRO Se PETITIONER*
Signature of Attorney (if any)

See, Attached Memorandum of Law

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JAMES SAMPLE,                          :        CIVIL ACTION
           Petitioner,          :

       v.                              :        NO._____

JOSEPH W.CHESNEY,Superintendent        :
of S.C.I.-Frackville,Pa.               :
1111-Altamont blvd.                    :
FRACKVILLE,Pa. 17931                   :
and,DISTRICT ATTORNEY OF               :
PHILADELPHIA COUNTY,                   :
           Respondents,          :

THE ATTORNEY GENERAL OF THE            :
COMMONWEALTH OF PENNSYLVANIA,          :
     Additional Respondent.       :

MEMORANDUM OF LAW IN SUPPORT OF
PETITION FOR WRIT OF HABEAS CORPUS UNDER 2254 et seq.

    COMES NOW, James Sample, the <u>pro se</u> Petitioner of the about captioned matter, and respectfully represents the following:

I. <u>Statement of jurisdiction</u>

    1. This is a application/petition for writ of habeas corpus filed in a district court by a person in custody pursuant to the judgment of a state court and, as the facts and grounds raised below demostrate, petitioner's custody is in violation of the constitution and laws of the united states. 28 U.S.C. Section 2254 (a).

    2. Your petitioner is entitled to have his grounds for relief reviewed by this court because:

        (a)the petitioner has exhausted the remedies available in the courts of the state;and,

        (b)there is an absence of available state corrective process and,

        (c)circumstances exist that render such process ineffective

-1-

See, Section 2254(b)(1)(A)(B)(i)(ii) and (B)(2).

## II. Procedural History

Petitioner was tried by jury before the Honorable Francis A. Biunno from May 27, 1992, to June 12, 1992.

On June 12, 1992, petitioner was found guilty of Murder in the First Degree, Criminal Conspiracy, Intimidation of a Witness and Terroristic Threats by the jury. On June 17, 1992 Post Verdict Motions were filed by Petitioner and then Supplemental Post Post Verdict Motions were filed with the permission of the lower court.

Post Verdict Motions were heard and argued before the lower court on October 7, 1992. At that time such motions were denied and Petitioner was sentenced to life imprisonment in a State Correctional Institution on the First DEgree Murder conviction (Bill of Information Number 1745). On Crinimal Conspiracy (Bill of Information Number 1749), Intimidation of a Witness (Bill of Information Number 1750), and Terroristic Threats (Bill of Information Number 1751) convictions, Petitioner was sentenced respectively to five (5) to ten (10) years, one (1) to five (5) years, and one (1) to five (5) all to run concurrently with each other and the murder conviction.

Petitioner filed timely notice of appeal on October 30, 1992. On September 27, 1993, an appellate brief was filed on petitioner's behalf to the Superior Court of Pennsylvania. The Superior Court affirmed petitioner's conviction on June 6, 1994.

Petitioner then filed a Petition For Allowance of Appeal

in the Supreme Court of Pennsylvania which was denied on April 11th 1995.

On January 11, 1997, petitioner filed a _pro se_ PCRA petition, his first and only such pleading filed. The PCRA court appointed counsel, who subsequently filed a motion to withdraw based on counsel's assessment that petitioner presented no meritorious issues in his petition. The PCRA court agreed with counsel's assessment and granted counsel's motion, dismissing the PCRA petition on January 9, 1998.

Petitioner filed _pro se_ notice of appeal and brief in the Superior Court, which court issued a judgment on September 9, 1999 affirming the order dismissing PCRA relief.

Thereafter, petitioner filed a timely petition for allowance of appeal in the Supreme Court of Pennsylvania and, on January 31, 2000 he attempted to file a _pro se_ Application for leave to file supplemental issues and exhibits.

Per Order of the Supreme Court detaed February 24th 2000, the petition for allowance of appeal was denied.

On March 6, 2000 petitioner filed an Application For Rehearing in the Supreme Court of Pennsylvania. After that pleading was denied, this petition was filed in the federal district court.

### III. Statement of The Facts

On September 24, 1990, around 7:00 p.m. Bernard Brown came home from being out all night and asked his step-son, Calvin King, to go to the store for some cigarettes. Mr. King left the home only to return a few minutes later. Mr. Brown testified that

when he returned Calvin asked if he needed the cigarettes right away. Mr. Brown said, no, and then Calvin said he was going out with "germ," James Sample.

Sherrie Bradley, a fifteen year old witness, testified that at approximately 9:00 or 9:30 p.m., she heard footsteps outside and looked out her bathroom window to see what was going on. Ms. Bradley then testified that she saw petitioner, and several other men running behind Mr. King; minutes later she heard four to six gunshots.

On cross-examination, Ms. Bradley testified that she never saw a weapon in petitioner's hand nor did she see him shoot anyone. Upon further examination, it is discovered that this witness and petitioner had a sexual relationship in the past. Two letters were written by Ms. Bradley to the petitioner before trial claiming that petitioner was the father of one of her children. Under oath, Ms. Bradley denied writing these letters.

Following extensive cross-examination Ms. Bradley finally admitted that she did write the letters. In fact, there was a stipulation by and between counsel that Ms. Bradley in fact lied under oath in denying that she had written the said letters or sent pictures of a male child, alleging petitioner to be the father. There was also a stipulation by the prosecutor that Bradley did not have a child, nor had she ever been pregnant.

Additionally, Bradley gave a statement in defense counsel's office in which she stated that she never saw petitioner chasing anyone. On cross-examination Bradley testified that some things were the truth and some were lies in this statement of hers.

- 4 -

Mr. Calvin King was found dead the following morning of September 25, 1990, at approximately 7:30 a.m.; the manner of death was several gunshot wounds to the body.

### IV. Summary of The Issues Involved

The following issues are divided into two groups: issues exhausted via direct appeal (Grounds, A thru D) and, issues exhausted under PCRA-appeal (Grounds, E thru L):

A. Ground one: THE TRIAL COURT AND SUPERIOR COURT ERRED IN AFFIRMING THE FAILURE TO DISMISS THE CHARGES AGAINST PETITIONER ON DOUBLE JEOPARDY GROUNDS FOLLOWING A MISTRIAL GRANTED AS A RESULT OF INTENTIONAL PROSECUTORIAL MISCONDUCT AND THE SUPREME COURT'S DENIAL OF ALLOWANCE OF APPEAL DEPRIVED PETITIONER OF HIS RIGHT TO PROCEDURAL DUE PROCESS OF LAW.

B. Ground two: THE TRIAL COURT AND SUPERIOR COURT ERRED IN AFFIRMING THE INTRODUCTION OF HEARSAY TESTIMONY WHICH ESTABLISHED THE ONLY EVIDENCE OF THE PETITIONER'S CONTACT WITH THE DECEASED ON THE EVE OF THE SHOOTING AND THE SUPREME COURT'S DENIAL OF ALLOWANCE OF APPEAL DEPRIVED PETITIONER OF HIS RIGHT TO PROCEDURAL DUE PROCESS OF LAW.

C. Ground Three: THE TRIAL COURT AND SUPERIOR COURT ERRED IN FINDING THAT THE PROSECUTION DID NOT ENGAGE IN A PATTERN OF MISCONDUCT WHICH PERMEATED THE ENTIRE TRIAL, THUS DENYING PETITIONER HIS RIGHT TO A FAIR TRIAL AND THE SUPREME COURT'S DENIAL OF ALLOWANCE OF APPEAL DEPRIVED PETITIONER OF HIS RIGHT TO PROCEDURAL DUE PROCESS OF LAW.

D. Ground four: THE TRIAL COURT AND SUPERIOR COURT ERRED DENYING PETITIONER A NEW TRIAL DUE TO THE FACT THAT A COMMONWEALTH WITNESS COMMITTED PERJURY IN THE PRESENT CASE AND YET THE JURY WAS PERMITTED TO ACCEPT HER ENTIRE TESTIMONY AS EVIDENCE OF PETITIONER'S GUILT AND THE SUPREME COURT'S DENIAL OF ALLOWANCE OF APPEAL DEPRIVED PETITIONER OF HIS RIGHT TO PROCEDURAL DUE PROCESS OF LAW.

E. Ground five: PETITIONER WAS DEPRIVED DUE PROCESS OF LAW, WHERE THE PROSECUTING ATTORNEY NOT ONLY ALLOWED FALSE TESTIMONY OF IT'S WITNESS TO STAND UNCORRECTED, BUT ALSO REINFORCED THE DECEPTIONS BY POSING MISLEADING QUESTIONS TO HIS WITNESS AND CAPITALIZING ON IT IN CLOSING ARGUMENT. AND, THE TRIAL, SUPERIOR AND SUPREME COURT DENIED PETITIONER OF HIS RIGHT TO PROCEDURAL DUE PROCESS OF LAW WHEN THEY FAILED TO REMEDY THIS ISSUE.

F. Ground six: THE PROSECUTOR ENGAGED IN A PATTERN OF MISCONDUCT IN CLOSING ARGUMENT, WHICH THE ACCUMULATIVE EFFECTS PREJUDICED PETITIONER AND DEPRIVED HIM THE STATE AND FEDERAL RIGHTS TO DUE PROCESS AND A FAIR TRIAL AS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION. AND, THE TRIAL, SUPERIOR AND SUPREME COURTS DENIED PETITIONER OF HIS RIGHT TO PROCEDURAL DUE PROCESS OF LAW WHEN THEY FAILED TO REMEDY THIS ISSUE.

G. Ground seven: THE TRIAL COURT ABUSED IT'S DISCRETION IN PERMITTING THE PROSECUTING ATTORNEY TO MAKE IMPROPER AND PREJUDICIAL STATEMENTS, REMARKS, AND INFERENCES IN HIS CLOSING SUMMATION TO THE JURY. AND THE SUPERIOR AND SUPREME COURTS DENIED PETITIONER OF HIS RIGHT TO PROCEDURAL DUE PROCESS OF LAW WHEN THEY FAILED TO REMEDY THIS ISSUE.

H. Ground eight: THE TRIAL COURT ABUSED IT'S DISCRETION IN OVERRULING TRIAL COUNSEL'S OBJECTION AND RULING THAT THE LETTERS WRITTEN BY A COMMONWEALTH WITNESS WAS IRRELEVANT. AND THE SUPERIOR AND SUPREME COURTS DENIED PETITIONER OF HIS RIGHT TO PROCEDURAL DUE PROCESS OF WHEN THEY FAILED TO REMEDY THIS ISSUE.

I. Ground nine: PETITIONER WAS DEPRIVED OF DUE PROCESS AND A FAIR TRIAL, WHEN THE TRIAL COURT ERRONEOUSLY INSTRUCTED THE JURY. AND THE SUPERIOR AND SUPREME COURTS DENIED PETITIONER OF HIS RIGHT TO PROCEDURAL DUE PROCESS OF LAW WHEN THEY FAILED TO REMEDY THIS ISSUE.

J. Ground ten: TRIAL COUNSEL WAS CONSTITUTIONALLY INEFFECTIVE FOR FAILING TO GIVE A SPECIFIC OBJECTION AS TO THE RELEVANCY OF THE LETTERS WRITTEN BY THE COMMONWEALTH'S STAR WITNESS TO THIS PETITIONER. AND THE TRIAL, SUPERIOR AND SUPREME COURTS DENIED PETITIONER OF HIS RIGHT TO PROCEDURAL DUE PROCESS OF LAW WHEN THEY FAILED TO REMEDY THIS ISSUE.

K. Ground eleven: TRIAL COUNSEL WAS CONSTITUTIONALLY INEFFECTIVE IN FAILING TO OBJECT AND SEEK CORRECTIVE ACTION BY THE COURT, WHEN THE COMMONWEALTH'S WITNESS WAS PERSISTENT IN GIVING FALSE AND MISLEADING TESIMONY. AND THE TRIAL, SUPERIOR AND SUPREME COURTS DENIED PETITIONER OF HIS RIGHT TO PROCEDURAL DUE PROCESS OF LAW WHEN THEY FAILED TO REMEDY THIS ISSUE.

L. Ground twelve: TRIAL COUNSEL WAS CONSTITUTIONALLY INEFFECTIVE FOR FAILING TO OBJECT TO, RAISE, AND/OR PRESERVE FOR POST-TRIAL, DIRECT APPEAL MERITORIOUS ISSUES OF PROSECUTORIAL MISCONDUCT AND JUDICIAL ERRORS. AND THE TRIAL, SUPERIOR AND SUPREME COURTS DENIED PETITIONER OF HIS RIGHT TO PROCEDURAL DUE PROCESS OF LAW WHEN THEY FAILED TO REMEDY THIS ISSUE.

## V. Scope and Standard of Review

Pursuant to 28 U.S.C. § 2254(b), an applicant for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --

(1) result in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

See E.g., Matteo v. Superintendent, SCI Albion, 171 F.3d 877, 885 (3d Cir. 1999).

Under §2254(e)(1), it holds that, in a proceeding initiated by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

Also, the circumstances which would warrant an evidentiary hearing in the habeas court are strictly limited under 28 U.S.C.§2254(e)(2).

See, Banks v. Horn, 63 F.Supp.2d 525, 536 (M.D.Pa. 1999)

## VI. Reasons For Granting Writ

A. GROUND ONE: THE TRIAL COURT AND SUPERIOR COURT ERRED IN AFFIRMING THE FAILURE TO DISMISS THE CHARGES AGAINST PETITIONER ON DOUBLE JEOPARDY GROUNDS FOLLOWING A MISTRIAL GRANTED AS A RESULT OF INTENTIONAL PROSECUTORIAL MISCONDUCT AND THE SUPREME COURT'S DENIAL OF ALLOWANCE OF APPEAL DEPRIVED PETITIONER OF HIS RIGHT TO PROCEDURAL DUE PROCESS OF LAW.

Double jeopardy has long been understood to preclude a re-trial where a mistrial was intentionally caused by prosecutorial misconduct. The Double Jeopardy Clause of the Pennsylvania Constitution prohibits re-trial of a defendant not only when prosecutorial misconduct is intended to provoke the defendant into moving for a mistrial, but also when the conduct of the prosecutor is intentionally taken to the point of denial of a

fair trial. <u>Commonwealth v. Smith,</u> 532 Pa. 177, 615 A.2d 321 (1992), citing <u>Oregon v. Kennedy,</u> 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982)("double jeopardy will attach only to those mistrials which have been intentionally caused by prosecutorial misconduct.")

In essence, <u>Smith, supra,</u> provides two situations where the double jeopardy clause becomes applicable. A trial will be barred when it is shown either that the Commonwealth goaded the defendant into moving for a mistrial or specifically undertood to prejudice the accused in order to deprive him of a fair trial. <u>Commonwealth v. Rightley,</u> 421 Pa. Super. 270, 617 A.2d 1293 (1992).

In the first trial of the instant case, a mistrial was granted as a result of intentional prosecutorial misconduct involving the withholding of inculpatory evidence in the form of an admission by the petitioner. (N/T. 5/28/92, p.84). A police officer testified that petitioner had made an admission which inculpated him in the crime. Defense counsel immediately objected and moved for a mistrial based on the violation of the mandatory disclosure rule. (N/T. 5/27/93, pp. 91-99). Counsel had not been provided with notice of or the state itself until the testimony of the officer.

The Pennsylvania Rules of Criminal Procedure, 42 Pa. C.S.A. 305 B (1)(b), provides the following:

  B. Disclosure by the Commonwealth

  (1) Mandatory: In all court cases, on request by the
  defendant, and subject to any protective order which
  the Commonwealth might obtain under this rule, the
  Commonwealth shall disclose to the defendant's attorney

- 8 -

all of the following requested items or information, provided they are material to the instant case. The Commonwealth shall, when applicable permit the defendant's attorney to inspect and copy or photograph such items.

(b) any written confession or inculpatory statement, or the substance of any oral confession or inculpatory statement, and the identity of the person to whom the confession or inculpatory statement was made, which is in the possession or control of the attorney for the Commonwealth.

Accordingly, it is the absolute duty of the prosecutor to disclose to defense counsel any inculpatory statement of the defendant. Here, the prosecutor finally admitted he had the inculpatory information before trial:

MR. FISHER: ...and I did receive that information a day or so before trial. (N/T. 5/28/92, p.3)

The first day of trial was May 19, 1992. It was not until May 27, 1992, the testimony regarding the inculpatory statement was revealed. During the first trial, defense counsel opened to the jury that there was absolutely no inculpatory evidence implicating his client. Counsel continued with this theory throughout the trial only to have this statement, which was known to the Commonwealth, thrown in his face during the testimony of Officer Murphy.

That Commonwealth tactic was clearly in violation of the rule of Brady v. Maryland, 83 S.Ct. 1194. See, Smith, supra, at 615 A.2d 322.

Petitioner was highly prejudiced by the prosecutor's conduct in not turning over the statement and thus goaded petitioner into moving for a mistrial.

A prosecutor's improper use of an investigating officer's report on an oral statement given by defendant to impeach defendant's credibility was found to be highly prejudicial conduct and constituted reversible error in Commonwealth v. Jenkins, 476 Pa. 467, 383 A.2d 195 (1998). Here, the petitioner's undisclosed statement was not only used to impeach him, it was used to contradict petitioner's entire defense. The prosecutor's conduct was not only highly prejudicial, but faced with this unfair surprise, petitioner was forced to move for a mistrial. The prosecutor's actions herein contravened both aspects of the Smith, supra, test, first, by goading petitioner into moving for a mistrial and second, by specifically undertaking to prejudice petitioner in order to deprive him of a fair trial. Therefore, the petitioner's second trial should have been barred. See, Kennedy, Smith, Rightley, supra. The retrial violated petitioner's right not to be placed in jeopardy twice and thus, the trial, Superior and Supreme Courts deprived petitioner of his right to procedural due process of law.

B. GROUND TWO: THE TRIAL COURT AND SUPERIOR COURT ERRED IN AFFIRMING THE INTRODUCTION OF HEARSAY TESTIMONY WHICH ESTABLISHED THE ONLY EVIDENCE OF THE PETITIONER'S CONTACT WITH THE DECEASED ON THE EVE OF THE SHOOTING AND THE SUPREME COURT'S DENIAL OF ALLOWANCE OF APPEAL DEPRIVED PETITIONER OF HIS RIGHT TO PROCEDURAL DUE PROCESS OF LAW.

Hearsay is an out-of-court statement offered at trial to prove the truth of the matter contained in the statement. Commonwealth v. Coleman, 458 Pa. 112, 326 A.2d 387 (1974). Evidence that is relevant is nonetheless inadmissible if it violates the

hearsay rule.  <u>Commonwealth v. Lippert,</u> 454 Pa. 181, 383-384, 311 A.2d 586, 587 (1973).  Hearsay is inadmissible unless the offering party can bring the statement within an exception to the hearsay rule.  This basis for rejecting hearsay evidence is its assumed unreliability because the declarant is not before the trier of fact and cannot be challenged as to the accuracy of the statement.  <u>Commonwealth v. Smith,</u> 523 Pa. 577, 593, 568 A.2d 600, 608 (1989).  Out-of-court statements are usually not made under oath and lack the conventional indicia of reliability <u>Chambers v. Mississippi,</u> 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973).  The reason that such evidence is subject to exclusion is related to the safeguards of cross-examination afforded by the Fourteenth Amendment to the United States Constitution are render nugatory.

Here, the trial court permitted the introduction of hearsay testimony which established the only evidence of petitioner's contact with the deceased on the eve of the homicide.

Specifically, the trial court permitted the following testimony:

Q: (Mr. Fisher) DO YOU RECALL WHAT WAS ___ WHAT DID YOU SAY TO CALVIN JUST BEFORE HE DIED OR WHAT WAS HE DOING?

A: (Bernard Brown) WELL, MY WIFE AND I HAD JUST CAME HOME AFTER BEING OUT ALL NIGHT, AND WE RAN OUT OF CIGARETTES.  SO I ASKED HIM (Calvin) TO GO GET A PACK OF CIGARETTES.  SO HE LEFT OUT FOR ABOUT THREE OR FOUR MINUTES, CAME BACK, ASKED DO WE NEED THE CIGARETTES RIGHT AWAY.  I said no.  HE SAID, "WELL, I'M GOING WITH GERM (PETITIONER) AND I'LL BRING THE CIGARETTES BACK LATER ON."  AND THAT WAS THE LAST TIME I SAW HIM.

N/T June 2, 1992, pp. 52-53).  Trial counsel preserved this issue
as he objected to this hearsay testimony when it was offered during
the first trial.  The trial court permitted the testimony during
the first trial, therefore, counsel did not object during the
second trial.  N/T May 27, 1992, p.54.  This out-of-court statement
is clearly hearsay as it was offered to prove that the victim
was with petitioner the evening before the deceased body was found.
Further, this was the only evidence to corroborate the recanted
and unreliable eyewitness testimony.

     The trial court found the out-of-court statement offered
by the prosecution was properly admitted as a "present sense
impression" exception to the hearsay rule.  The trial court
reasoned that the declarations of the deceased indicated an
existing intent, made in a natural manner and relevant to the
proceedings.  (Trial Court opinion, p.5).  However, for this
exception to apply, it must be certain from the circumstances
that the utterance was instinctive rather than deliberate.
Commonwealth v. Blackwell, 343 Pa. Super. 201, 212, 494 A.2d 426,
431 (1985).  The statement of the now deceased to his stepfather
that he was going out with a particular person and that he would
be back latter on with cigarettes was a product of a retrospective
mental process, not a reflex product of immediate sensual
impressions.  Certainly, this statement does not fall within the
present sense impression exception to the hearsay rule.

The sole reason for the prosecution to offer this statement

into evidence was to establish the truth of the matter asserted

in the statement which unduly prejudiced petitioner.  Specifically,

the statement allowed the jury to conclude that the night before

the deceased body was found, the deceased was going out with

petitioner.  However, no other witness put petitioner with the

deceased on the eve of the homicide.  This hearsay testimony was

corroborated only be recanted and unreliable eyewitness testimony.

(N/T. 6/2/92, p. 63).  Therefore, the trial court erred in

permitting this hearsay testimony thus warranting a reversal of

the judgment of the Supreme Court.

C. GROUND FOUR: THE TRIAL COURT AND SUPERIOR COURT ERRED IN FINDING THAT THE PROSECUTION DID NOT ENGAGE IN A PATTERN OF MISCONDUCT WHICH PERMEATED THE ENTIRE TRIAL, THUS DENYING PETITIONER HIS RIGHT TO A FAIR TRIAL AND THE SUPREME COURT'S DENIAL OF ALLOWANCE OF APPEAL DEPRIVED PETITIONER OF HIS RIGHT TO PROCEDURAL DUE PROCESS OF LAW.

In defining impermissible conduct by a prosecutor, the Supreme Court of Pennsylvania has adopted the standards set forth in the American Bar Association Standards Relating to the Prosecution Function, Section 5.8 of the ABA Standards provides:

(a) The prosecutor may argue all reasonable inferences from evidence in the record. It is unprofessional conduct for the prosecutor intentionally to misstate the evidence or mislead the jury as to the inferences it may draw.

(b) It is unprofessional conduct for the prosecutor to express his person belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant.

(c) The prosecutor should not use arguments calculated to inflame the passions and prejudices of the jury.

(d) The prosecutor should refrain from argument which would divert the jury from its duty to decide the case on the evidence, by injecting issues broader than the guilt or innocence of the accused under the controlling law, or by making predictions of the consequences of the jury's verdict.

ABA Project on Standards for Criminal Justice, Standards Relating to the Prosecution Function and the Defense Function 1.1 (Approved Draft, 1971) cited with approval in Commonwealth v. Cherry, 474 Pa. 295, 378 A.2d 800 (1977); Commonwealth v. Joyner, 469 Pa. 333, 365 A.2d 1233 (1976); Commonwealth v. Harvell, 458 Pa. 406, 327 A.2d 27 (1976). Also see Pa. Rules of Professional Conduct, 3.8.

As a minister of justice, the prosecutor has a responsibility to not be vindictive or attempt to influence the jury by arousing their prejudices.  He must therefore limit his argument to the facts in evidence and legitimate inferences thereof.  Commonwealth v. Gelman, 470 Pa. 179, 368 A.2d 253 (1977).  "Even when not improperly motivated, but calculated to extort the jury not to shirk their responsibility of returning a verdict of guilty when the evidence so warrants, arguments in this vein appeal to the fear of jurors, and tend to impute the wrongdoing of others to the present defendant.  Hence, they should meticulously avoided."  Id., at 184.

Although the Commonwealth is allowed some latitude in presenting its version of the case to the jury, the test to determine whether a new trial is warranted is based on the prosecutor's comments is the "unavoidable prejudice test."  See, Commonwealth v. Stern, 393 Pa. 152, 573 A.2d 1132 (1990), citing Commonwealth v. Johnson, 516 Pa. 27, 533 A.2d 994 (1987).  It is reversible error when the effects of such comments would prejudice the jury, "forming in their minds fixed bias and hostility toward the defendant so that they could not weigh the evidence objectively and render a true verdict."  Commonwealth v. Van Cliff, ___ Pa. ___, 397 A.2d 1173 (1979).

In the instant case, the prosecutor engaged in acts of misconduct, which permeated the entire trial, directed to incite the biases and prejudices of the jury.  IN his opening statement, the prosecutor made reference to the verdict rendered in the Rodney King trial and subsequent riots therefore:

> Mr. Fisher: There's no videotape here. And
> truly, I hope no one is expecting a videotape, because
> most crimes are not committed in such a way where there's
> somebody standing up in the window videotaping it.
> We wish that there was. And sometimes what? That
> doesn't even work.
>
> Mr. McMonagle: Objection move for a mistrial.
>
> The Court: Sustained. We're concerned with this
> trial. Let's stick to this trial.

(N/T 6/2/92, p. 18). In the previous trial, the prosecutor

attempted to make the same appeal to the biases and prejudices

of the jury and was warned that such conduct was improper. (N/T

5/27/93, pp. 18-22). However this warning from the bench did

not deter the prosecutor in the instant case. Such remarks had

only one purpose, namely, to inflame the passions of the jury.

See Commonwealth v. Gilman, 470 Pa. 179, 368 A.2d 253 (1977).

This was improper insofar as it diverted the jury from its task

of making a dispassionate and objective review of the evidenced.

The purpose of opening statements is to tell the jury how

a case will develop, its background and what the parties will

try to prove. Commonwealth v. Nelson, 311 Pa. Super. 1, 456 A.2d

1383 (1983). The prosecutor is allowed to make a fair deduction

from the evidence of what is to be presented during testimony.

Commonwealth v. Stevens, 276 Pa. Super. 428, 419 A.2d 533 (1980).

Those comments must be made in good faith and cannot be mere

assertions intended to inflame the passions of the jury. Common-

wealth v. Galloway, 302 Pa. Super. 145, 448 A.2d 568 (1982). In

this case the prosecutor exceeded the bounds of fairness and

impartiality. BY again referring to the videotape of the Rodney

King case in the second trial, the prosecutor showed he was willing to disregard the trial judge's warnings, to ignore the law, and incite passions to bolster the evidence that he was going to present.

The prosecutor further engaged in prosecutorial misconduct by introducing evidence that petitioner had threatened witnesses for the prosecution. Specifically, the prosecutor, through Commonwealth witness Detective James Dougherty, introduced evidence that Commonwealth witness Sherrie Bradley would be provided protection from petitioner:

> DET. DOUGHERTY: We went on any tried to allay her fears and tell her that, if necessary, we would speak with the housing authority to have the family moved from that location to another location, and then she finally agreed to tell us what she knew about the murder of Calvin King.

(N/T 6/4/92, p.30). Further, the prosecutor attempted to elicit testimony that petitioner threatened Commonwealth witness Sandra Scott, even though petitioner was never charged with threatening her:

> Q: (MR. FISHER) Up until a few days ago you were not staying at home, were you?
>
> A: (MS. SCOTT) No. Because you talked to my mom and my mom told me to go to a hotel, because I was going to get locked up. And you said no.
>
> Q: And I said no?
>
> A: No. You didn't say this. You had -- you suggested to my mom not to stay up in the project because you didn't think it was safe.
>
> (N/T 6/3/92, pp. 44-45; this testimony allows the prosecutor to rely on the theme of fear in his closing speech):
>
> MR. FISHER: But what resigns in Abbottsford (housing project)? FEAR.

(N/T 6/10/93, p. 53). The prosecutor looked the jury in the eyes and attempted to incite the fears and passions of the jury. This theme was developed by the prosecutor in such a way that it affected the jury's ability to render a fair and impartial verdict.

Further, the prosecutor characterized and discredited the ability and performance of petitioner's counsel. In his closing speech, the prosecutor improperly argued:

> MR. FISHER: I have not come here to stroke. I've come here to reason. Mr. McMonagle is emotional. He preaches. Sometimes when I hear Mr. McMonagle, and I've heard him on several occasions, that he is indeed is some sort of Baptist preacher. Turn on one of the early morning shows.

(N/T 6/10/92, p.37). By comparing defense counsel to a T.V. preacher you see only on early morning shows, the prosecutor directly attached defense counsel's credibility. Again, the prosecutor's comments had the unavoidable effect of prejudicing the jury.

The prosecutor continued to appeal to the passions and prejudices of the jury by continuously referring to the deceased military background, the fact that he was a wounded war hero:

> MR. FISHER: Calvin King's mistake was after twenty some years in the service, he came home. If a guy did something to you twenty years ago, thirty years ago -- I was in the service in the sixties -- somebody said something to you, you got into a fight with them. Some guys carry knives.
> Calvin King came home twenty some years later. Things have changed, turf has changed, the world has changed. You didn't front on anyone anymore. Some of you won't remember that world because you're young. The world has changed since them. Calvin King came home and took a knife a challenged a gunfighter. He came us dead. That's what thats really about. Calvin cut him in June, and Calvin wasn't the type of guy, obviously to back down. Been to Nam, was a veteran, he put his time in, wasn't going to let some young rough push him around.

(N/T 6/10/92, p. 71). Prosecutors should not be permitted to use such lines of argument to influence and invoke the jurors' sympathies. Commonwealth v. Cherry, 474 Pa. 295, 378 A.2d 800 (1977)(prosecutor's closing argument was improper and demanded a new trial because it suggested that the jury should render a verdict based on sympathy rather than the guilt or innocence of the accused). When the unavoidable effect of the prosecutor's remarks is to prejudice the jury, forming in their minds a fixed hostility and bias toward petitioner so that they cannot weigh the evidence and render a true verdict, a new trial is required. Commonwealth v. Stern, 393 Pa. 152, 573 A.2d 1132 (1990).

A prosecutor may not engage in the type of behavior exhibited by the prosecutor in this trial. As such, while petitioner has argued in the preceding pages that the individual actions cited therein are sufficient, in and of themselves, to entitle petitioner a new trial, petitioner recognizes that our courts have held that not every important act, especially if isolated, entitles a defendant a new trial. Therefore, petitioner submits that when the prosecutor's actions are taken in their entirety, there can be only one finding, namely, that the petitioner was deprived of a fair trial due to the prosecutor's complete and utter disregard of the law and limitations it places on the statements, questions and closing arguments of a prosecutor.

In Commonwealth v. Collins, 462 Pa. 495, 341 A.2d 492 (1975), Commonwealth v. Bricker, 506 Pa. 571, 487 A.2d 346 (1985), the Supreme Court established that if it can be shown that a prosecutor has engaged in a pattern of misconduct, then a new trial is

- 18 -

warranted even if each of the individual actions complained of, individually, were insufficient to warrant a new trial. Accordingly, petitioner asks for habeas corpus relief.

D. GROUND FOUR: THE TRIAL COURT AND SUPERIOR COURT ERRED DENYING PETITIONER A NEW TRIAL DUE TO THE FACT THAT A COMMONWEALTH WITNESS COMMITTED PERJURY IN THE PRESENT CASE AND YET THE JURY WAS PERMITTED TO ACCEPT HER ENTIRE TESTIMONY AS EVIDENCE OF PETITIONER'S GUILT AND THE SUPREME COURT'S DENIAL OF ALLOWANCE OF APPEAL DEPRIVED PETITIONER OF HIS RIGHT TO PROCEDURAL DUE PROCESS OF LAW.

Commonwealth witness, Sherrie Bradley, testified as a circumstantial witness to the shooting and claimed that petitioner and several other gentlemen were seen running behind the deceased immediately prior to hearing four to six gunshots. However, this witness perjured herself on the stand, yet the court permitted her complete testimony to remain as evidence and to be utilized in the jurors' finding of guilt. Specifically, Ms. Bradley lied about two letters she wrote to petitioner, saying numerous times during cross-examination that she never wrote the letters despite the fact the letters were handwritten, including her signature at the bottom and her former address on the outside of the envelop:

Q: (Mr. McMonagle) Please take a look at what has been marked as D-3 and tell me first of all, is that a letter that you wrote to Jim Sample?

A: (Ms. Bradley) I did not write this letter.

Q: Is it your testimony that you did not write what I'm holding in my hand?

A: I did not write that.

(N/T 6/2/93, p. 148); (See, generally, N/T 6/2/93, pp. 141-161).

- 19 -

In response to this perjury, defense counsel and the Commonwealth asked a handwriting expert to analyze the letter marked as defense exhibits number two and three. After hearing that the analysis was to take place, Ms. Bradley confessed that she in fact wrote the letter:

> MR. FISHER: The stipulation would be that Sherie Bradley, Commonwealth witness, not admits that she wrote the letters, and based on her admission, there is no need for a handwriting expert.

(N/T 6/9/93, p. 6) Therefore, the false testimony of Ms. Bradley should not have been placed into evidence. The Supreme Court has established that the use of perjured testimony is good reason for grant of a new trial. Commonwealth v. Lee, 478 Pa. 70, 385 A.2d 1317 (1978), Commonwealth v. Gaddy, 468 Pa. 303, 362 A.2d 217 (1976), Commonwealth v. Moehring, 445 Pa. 400, 285 A.2d 487 (1971). This rule of law should grant petitioner a new trial because the perjured testimony came from the only witness with testimony that petitioner was seen with the decedent immediately before the shooting. Accordingly, petitioner requests this court to grant a writ of habeas corpus.

E. GROUND FIVE: PETITIONER WAS DEPRIVED DUE PROCESS OF LAW WHERE THE PROSECUTING ATTORNEY NOT ONLY ALLOWED FALSE TESTIMONY OF IT'S WITNESS TO STAND UNCORRECTED, BUT ALSO REINFORCED THE DECEPTION BY POSING MISLEADING QUESTIONS TO HIS WITNESS AND CAPITALIZING ON IT IN CLOSING ARGUMENT. AND, THE TRIAL, SUPREME AND SUPREME COURT DENIED PETITIONER OF HIS RIGHT TO PROCEDURAL DUE PROCESS OF LAW FOR FAILING TO REMEDY THIS ISSUE.

In Napue v. Illinois, 360 U.S. 264, 79 S.Ct. 1173, 31 L.Ed 1217 (1959), the United States Supreme Court held that:

"A conviction obtained through use of false evidence, known to be such by the representative of the state, must fall under the Fourteenth Amendment. The same results obtains when the state although not soliciting false evidence, allows it to go uncorrected when it appears." Id., at 269, 79 S.Ct. at 1177.

Petitioner contends, even where defense counsel is aware of falsity, there may exist a deprivation of due process if

the prosecutor reinforces the deception by capitalizing on it in closing argument, See; UNITED STATES V. VALINTINE, 820 F.2d 565 (2Nd Cir.1987); UNITED STATES V. SANFILIPPO, 564 F.2d 176, 178 (5th Cir. 1977), or by posing misleading questions to witnesses, See; UNITED STATES V. BARTRAM, 595 F.2d 231, 243 N.17 (5th Cir. 1979).

Appellant respectfully submits that he was denied due process of law, and that the record in the case now before this Honorable Court will provide a shocking illustration of that violation as a result of prosecutorial misconduct in using false evidence.

At the time of trial, Commonwealth's witness Sherrie "Bradley" testified on direct-examination that she first heard footsteps outside, looked out her bathroom window and saw appellant accompanied by two other men all chasing Mr. King pass the back of her home and, shortly after, heard 4 to 6 shots. Bradley further testified that shortly after hearing those shots, she went downstairs, looked out her front door and saw a couple of unidentified men jump into a car. (N.T. 6/2/92, P.P. 93 - 95).

Upon cross-examination, defense counsel attempted to impeach Bradley through Commonwealth's exhibit C-5.,Id., As a statement given by Bradley to defense counsel's assistant Miss Martin, and the following colloquy took place:

Q: YOU AGREE WITH ME THE LADY SPECIFICALLY ASKED A QUESTION. WHAT HAPPENED THAT NIGHT AND YOU NEVER SAID ANYTHING ABOUT JIM SAMPLE RUNNING AFTER PEOPLE?

A: NO,I DIDN'T SAY ANYTHING TO HER.

Q: WHEN YOU WERE ASKED THAT QUESTION TODAY IN FRONT OF THIS JURY YOU TOLD THIS JURY YOU SAW JIM SAMPLE RUNNING AFTER PEOPLE AND HEARD GUNSHOTS.

A: THIS IS IN MY STATEMENT THAT I GAVE THE DETECTIVES.
(N.T. 6/2/92, P. 133).

Appellant contends the last aforecited responds by Bradley was totally false, and that the contents of her statement to the detectives proves such to be false. See Defense exhibit D-1., Id., As Bradley's statement to Philadelphia Homicide Division on 1/7/91, in which she was specifically asked by the detectives, "WHEN YOU SEEN THE GUY WHO GOT KILLED RUNNING DOWN TO THE RED ROOF COULD YOU SEE WHO WAS CHASING HIM?" Bradley clearly responded; "NO I DIDN'T LOOK BUT I COULD HEAR PEOPLE CHASING HIM. IT SOUNDED LIKE MORE THAN ONE PERSON." (See; D-1., P.5.)

Appellant Avers the granting of a new trial based upon a NAPUE violation is proper only if (1) The statement in question are shown to be actually false; (2) The prosecution knew that they were false; and (3) The statements were material. Thus, Appellant contends that he has meant the first requirement.

In meeting the second requirement, Appellant submits the following; (1) The prosecuting attorney not only had possession of D-1., prior to trial (N.T. 6/2/92, P.P. 135-136), but (2) Actually questioned the interviewing officer, "Det. James Dougherty," on it's contents while presenting his case to the Court and jury (N.T. 6/4/92, P.P. 58-59, P. 98, At 1-10, and P.P. 101-102).
(3) Det. Dougherty testified that after recording Bradley's statement, he informed the A.D.A., head of Homicide Division Barbara Christie, whom instructed him to bring the said information to her in the morning, which he complied (N.T. 6/4/92, P.P. 32-34).

- 22 -

Appellant contends that due to the following cases, he has meant

the second requirement; See: COMMONWEALTH V. HOLLOWELL, Supra At

237-38,383 A.2d 909, GIGLIO V. UNITED STATES, 405 U.S.150,154,92 S.Ct.

763, 766, 31 L.Ed. 2d 104 (1972), And COMMONWEALTH V. WALLACE, 455 A.2d

1187 (PA 1983) All stating;

"THE PROSECUTOR'S OFFICE IS AN ENTITY AND THE KNOWLEDGE OF ONE MEMBER
OF THE OFFICE MUST BE ATTRIBUTED TO THE OFFICE OF THE DISTRICT ATTORNEY
AS AN ENTITY."

Furthermore, IMBLER V. CRAVEN, 298 F.Supp.795 (1969) stated;

"PROSECUTING ATTORNEY CANNOT DENY KNOWLEDGE OF FACTS WHICH HE HAD
BEFORE HIM AND WHICH HIS AGENTS MAY HAVE IGNORED THOSE FACTS DOES NOT
RELIEVE THE STATE OF IT'S RESPONSIBILITY. IN FAILING TO ASCERTAIN THE
FACTS. IT IS, AT BEST, DELIBERATE FAILURE TO TAKE FULL NOTICE OF
THEIR SIGNIFICANCE." P.807.)

Appellant contends that during further cross-examination, of

Bradley, she rendered the following testimony; (N.T. 6/2/92.);

A: THAT'S THE TRUTH.THE TRUTH THAT I GAVE THE DETECTIVES.IT'S THE
TRUTH.(P.119 At 15.)

*     *     *     *     *

Q: WHAT DID YOU TELL THE POLICE?

A: I TOLD THE POLICE WHAT I SAW. (P. 134 At 6-25.)

*     *     *     *     *

Q: SO THAT STATEMENT AND THE DATE ON IT IS WRONG?

A: NO.THE STATEMENT THAT I GAVE IS THE TRUTH.

Q: RIGHT.

A: BUT THE DATE IS WRONG. (P. 141 At 9-12.)

Appellant contends that he has previously illustrated on P. 22 of

- 23 -

this brief, that Bradley's statement D-1, is inconsistent with her

direct testimony on, but unrestricted to, at least one critical factor.

In addition, appellant contends it to be evident that either and/or all

of the aforecited responses by Bradley, and/or her direct testimony are

both false. But in at least one being blatantly false, establishes that

false testimony was rendered during appellant's trial by a

Commonwealth witness, and was allowed to stand uncorrected.

UNITED STATES V. HARRIS, 498 F.2d 1164, At 1169 (1974); stated;

> "...THE PROSECUTOR IS REQUIRED TO APPRISE THE COURT WHEN HE KNOWS
> THAT HIS WITNESS IS GIVING TESTIMONY THAT IS SUBSTANTIALLY
> MISLEADING. THIS IS NOT TO SAY THE PROSECUTOR MUST PLAY THE ROLE
> OF DEFENSE COUNSEL, AND FERRET OUT AMBIGUITIES IN HIS WITNESS'
> RESPONSES ON CROSS-EXAMINATION. HOWEVER, WHEN IT SHOULD BE OBVIOUS
> TO HIM THE, THE WITNESS' ANSWER....UNTRUE, IS AS COMPELLING AS IT
> IN A SITUATION WHERE HE KNOWS HIS WITNESS IS INTENTIONALLY
> COMMITTING PERJURY."

Appellant further contends that the prosecutor not only failed to

apprise the Court, and/or correct any of the complained of testimony,

which in itself are acts expressively prohibited by Napue, Giglio, and

Harris, but also compounded the errors and prejudicial effects during

the following colloquy between the prosecuting attorney and the

interviewing officer of Bradley's statement Det. James Dougherty;

Q: DETECTIVE DOUGHERTY, WHAT'S MARKED AS D-1., Mr.McMONAGLE ASKED
YOU ABOUT, THE STATEMENT OF SHERRIE BRADLEY, THAT WAS TAKEN
CONTEMPORANEOUS WITH HER GIVING IT, WAS IT NOT, SAME TIME? SAME TIME
SHE WAS TELLING YOU WHAT WAS GOING ON, YOU WERE TYPING; IS THAT CORRECT?

A: YES, SIR. DET. McGUOIRK WAS DOING THE TYPING.

Q: YOU WERE THERE THOUGH, AT THE TIME?

A: YES, SIR.

Q: AND SHE SIGNED IT RIGHT AFTERWARDS; IS THAT CORRECT?

A: AFTER IT WAS GIVEN TO HER AND SHE READ IT AND I READ IT
BACK TO HER

Q: AND THAT WAS THE ONLY FORMAL STATEMENT THAT WAS TAKEN, IS THAT
CORRECT, BY PHILADELPHIA POLICE?

A: IT IS TO MY KNOWLEDGE. YES.

(N.T. 6/4/92. P. 58 At 9-25.)

*    *    *    *    *

Q: AND IN THAT STATEMENT, SHE'D INDICATED TO YOU THAT THE PERSON
SHE SAW THAT NIGHT RUNNING WAS THIS DEFENDANT; IS THAT CORRECT?

A: POSITIVELY. YES, SIR.

N.T. 6/4/92. P. 59 At 5-8-.)

In regards to the above colloquy, appellant contends by the prosecutor

failing to make known that Bradley's statement was incompatible with

her trial testimony or specify where and when, in her statement, Bradl

indicated seeing appellant running, the prosecutor knowingly mislead

the jury to conclude that due to the procedure in which Bradley's

statement was taken and to whom it was taken by, that it was inconsist

with her trial testimony, reliable, and had indicated in her statement

seeing appellant running after Mr. king. Which under the unusual

circumstances of this case, reinforced Bradley's falsehoods, and there

contributing to the deprivation of due process.

The Court in UNITED STATES V. BARTRAM, 595 F.2d 231 (1979) stated;

"THE GOVERMENT, THROUGH THE PROSECUTING ATTORNEY, KNEW THAT IT'S
WITNESS HAD CONVEYED TO THE JURY SOMETHING OTHER THAN THE TRUTH. YET
THE PROSECUTOR MADE NO ATTEMPT TO CORRECT THE FALSE EVIDENCE. IN FACT,
ALTHOUGH PERHAPS UNWITTINGLY, IT REINFORCED THE DECEPTION THROUGH
QUESTIONS ASKED OF THE WITNESS." At 241.

Bartram contended that all this combined to deprive him due process an

a fair trial, and that his conviction must therefore be reversed.

- 25 -

The Court agreed. 595 F.2d At 241, (1979).

The Court in IMBLER V. CRAVEN, stated;

"IT IS NOT ONLY AFFIRMATIVE MISREPRESENTATIONS WHICH THE PROSECUTOR IS PROHIBITED FROM EMPLOYING TO SECURE A CONVICTION; OMISSIONS AND HALF-TRUTHS ARE EQUALLY DAMAGING AND PROHIBITED, AND THEIR USE IS NO LESS CULPABLE."

At 298 F. Supp. 806 (1969), Citing: JACKSON V. WAINWRIGHT, 390 F.2d 288,

298 (5th Cir. 1968).

"CREATING AN INFERENCE THAT A FACT EXIST WHEN IN FACT TO THE KNOWLEDGE OF THE PROSECUTION IT DOSE NOT, CONSTITUTES THE KNOWING USE OF FALSE TESTIMONY." E.Q.,TURNER V. WARD, 321 F.2d 918, 920-921 (10th Cir. 1963).

Appellant contends the false testimony of Bradley's, and the misleading

evidence created through the prosecution's line of questioning of Det.

Dougherty which served to reinforce the deception, were all exploited

in the following instances of the prosecutor's closing argument:

(N.T. 6/10/92.);

"LET'S TALK ABOUT THE LETTERS. (3) SHRRIE BRADLEY GAVE A STATEMENT TO THE POLICE, AND THERE'S NO DISPUTE ABOUT THAT, ALTHOUGH IT'S ON THE 7TH. THE POLICE DIDN'T GET HER UNTIL WHEN?" (P. 53 At 19-23.)

*    *    *    *    *

"LET'S GO BACK TO THE LETTERS. PUT IT IN CONTEXT. SHE GIVES THE STATEMENT TO THE POLICE. AND SHE SAYS IT WAS THE DEFENDANT THAT I SAW RUNNING DOWN THERE." (P. 54 At 6-10)
"ONE THING THAT'S NEVER CHANGED IN BOTH HER COURT'S TESTIMONY, IS THAT THE DEFENDANT WAS THE GUY SHE SAW BACK THERE THAT NIGHT. THAT HAS NEVER, NEVER CHANGED. SHE GOES TO THE LAWYER'S OFFICE WITH SOME GUY, KEEP IN MIND, BECAUSE WERE GOING TO PUT THIS IN CONTEXT, DENISE ROSS AS WELL. IT'S NOT SIGNED. (4) STATEMENT THE POLICE TAKE IS NOT ONLY SIGNED, IT'S SIGNED ON EVERY BLOOMING PAGE. THIS ISN'T SIGNED ANYWHERE." (P. 57 At 3-12.)

*    *    *    *    *

Footnote (3)
    Two letters were written by Bradley to appellant before trial and two photographs of a child were sent to appellant, claiming appellant had fathered her son. Under oath she denied writing these letters. After she left the stand, the prosecutor revealed to defense counsel that Bradley eventually admitted to him that she in fact wrote the letters. This was stipulated before the jury.
Note (4):
    Referring to Bradley's statement given in defense counsel's office.

- 26 -

"BUT <u>I SUGGEST IF YOU LOOK AT THE EVIDENCE HERE</u>, PEOPLE SAW HIM, PEOPL
HEARD HIM LEAVING WITH CALVIN, <u>SHERRIE SAW HIM RUNNING DOWN THE STREET
WITH CALVIN</u>, SANDRA SAW HIM, <u>told the police that.</u>" (P. 72 At 2-6.)

Appellant avers that Bradley's statement D-1., Contains no

indication of. 1) Appellant ever being present in the back of her home

2) Appellant ever running in the same direction which Bradley alleged

to have seen Calvin running, more or less indicated; 3) Appellant

running with or after Calvin. Thus appellant contends that in the

prosecutor's explicit and implicit statements, he successfully conveye

to the jury "THAT BRADLEY GAVE A STATEMENT TO THE POLICE, IN WHICH SHE

SAW APPELLANT IN THE BACK OF HER HOUSE RUNNING AFTER CALVIN KING."

And that such, violated the due process prohibition against a

prosecutor's making "KNOWING USE OF FALSE EVIDENCE," including by

misrepresenting the nature of nontestimonial evidence. See <u>VALENTINE</u>,

820 F.2d At 570, Citing; <u>MILLER V. PATE</u>, 386 U.S. 1, 6-7, 87 S.Ct. 785,

787-788, 17 L.Ed.2d 690 (1967); See also <u>NAPUE V. ILLINOIS</u>, 360 U.S.

264, 269, 79 S.Ct. 1173, 1177, 3 L.Ed.2d 1217 (1959); <u>UNITED STATES V.

LUSTERINO</u>, 450 F.2d 572, 574-75 (2d Cir. 1971).

The Court in <u>UNITED STATES V. SANFILIPPO</u>, 564 F.2d 176 (1977) stated;

"THE PROSECUTOR NOT ONLY PERMITTED FALSE TESTIMONY OF ONE OF IT'S
WITNESSES TO GO TO THE JURY TO CONSIDER. WHETHER EITHER INSTANCE ALONE
WOULD MERIT REVERSAL, WE NEED NOT DECIDE, FOR TOGETHER THEY DO." At 179

Several Courts have held that prosecutorial misconduct consisting

of failure to correct false testimony does not rise to the level of a

Fourteenth Amendment violation unless it can be said that there was a

reasonable likelihood that the testimony affected the judgment of the

jury or that it may have had an effect on the outcome of the trial.

Giglio, 405 U.S. At 154, 92 S.Ct. At 766; Napue, 360 U.S. At 271,

79 S.Ct. At 1178; United States V. Petrillo, 821 F.2d 85 (2d Cir. 1987

The Supreme Court reversed Giglio's conviction, concluding that the

credibility of the witness was an important issue in the case, and that

the jury was entitled to know of evidence relevant to it's credibility

405 U.S. At 154-55, 92 S.Ct. At 766. In so doing, the Court announced

the standard that controls false evidence or perjured testimony cases:

" A NEW TRIAL IS REQUIRED IF THE FALSE TESTIMONY COULD IN ANY
REASONABLE LIKELIHOOD HAVE EFFECTED THE JUDGMENT OF THE JURY."

Id. At 154, 92 S.Ct. At 766; United States V. Agurs, 427 U.S. 97, 103,

92 S.Ct. 2392, 49 L.Ed.2d 342, (1975)

In regards to materiality, appellant contends that there was no

physical evidence connecting him to the crime, no eye witness to the

murder or any shooting. Appellant was found not guilty of all gun

charges. Denise Ross, a witness for the defense, was with Bradley at

the time of the incident and testified that she and Bradley heard

several gunshots, ran upstairs, looked out the bathroom window but,

saw nothing. Thus, the states case came down to the jury's estimate of

the truthfulness and reliability of the witnesses. Bradley gave

testimony on direct-examination, placing appellant with other men in

the back of her home chasing Mr. Calvin King towards the direction in

which his body was discovered. Bradley gave testimony on

cross-examination, that her statement to the detectives contained the

same information she testified to on direct-examination. This was false

Not only did the prosecutor fail to correct or notify the Court of this

falsehood, but he sat by silently while Bradley repeatedly testified

that "SHE GAVE THE DETECTIVES THE TRUTH," "TOLD THE POLICE WHAT SHE

SAW," and that "THE STATEMENT SHE GAVE THEM WAS THE TRUTH." See; page

23 of this brief. The jury was entitled to know that Bradley gave false

testimony, in that her statement to the detectives was contrary to her

direct testimony. Appellant contends that the states case was aided by

false testimony with the silent approval of the prosecutor, and had the

jury been made aware of her falsehoods, they very well may have

concluded that her credibility could not be relied upon.     Bradley's

direct testimony was not only improperly supported by her false

responses on cross-examination, which gave the jury the impression that

she had been consistent with her story except, with the statement given

in defense counsel's office, but the deception was also reinforced

through the prosecutor's questions to detective Dougherty, and the

prosecutor's exploitation of the deception in his closing summation to

the jury, in an effort to bolster and/or rehabilitate Bradley's

credibility. Appellant contends, in view of all this, the jury could not

have properly evaluated Bradley's credibility, and there is a reasonable

likelihood that it's verdict was thereby affected.     After more than

(14) hours of deliberating, the jury submitted a note to the trial

Court, which stated;

     "JUDGE BIUNNO, WE HAVE MADE MORE PROGRESS, HOWEVER, IT SEEMS WE ARE,
QUOTE, HUNG, IF I HAVE THE CORRECT DEFINITION OF THAT..."
See: (N.T. 6/12/92, P. 2) or (Court exhibit No.3.)

     Appellant contends, the jury's note manifested that the states

evidence was scant, and that it is highly likely that, Bradley's

falsehoods, the reinforcement of the deception, and the prosecutor

arguing upon such to the jury, as reliable evidence towards appellant's

guilt, had an effect on the outcome. As the Supreme Court said in

UNITED STATES V. AGURS;

"IF THE VERDICT IS ALREADY OF QUESTIONABLE VALIDITY, ADDITIONAL
EVIDENCE of RELATIVELY MINOR IMPORTANCE MIGHT BE SUFFICIENT TO CREATE A
REASONABLE DOUBT."

Id. 427 U.S. 97, 113, 96 S.Ct. 2392, 2402, 49 L.Ed.2d 342 (1976);

BROWN V. BORG, 951 F.2d 1011 (9th Cir. 1991) At 1017.

Appellant submits, the prosecutorial misconduct in this case

consisting of failure to correct or notify the Court of false testimony

amd reinforcing the deception by posing misleading questions to a

witness and capitalizing on it in closing argument, combined to deprive

him of due process and a fair trial, and that this innocent appellant's

conviction should therefore be reversed.


ISSUE 2.

WHETHER THE PROSECUTOR ENGAGED IN A PATTERN OF PROSECUTORIAL
MISCONDUCT, IN CLOSING ARGUMENT, WHICH THE CUMULATIVE EFFECT PREJUDICED
APPELLANT AND DEPRIVED HIM OF STATE AND FEDERAL RIGHTS TO DUE PROCESS
AND A FAIR TRIAL AS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS
OF THE UNITED STATES CONSTITUTION.


In defining impermissible conduct by a prosecutor, the Supreme

Court of Pennsylvania has adopted the standards set forth in the

American Bar Association standards relating to the Prosecution Function.

Section 5.8, of the A.B.A. standards provides:

(a) The prosecutor may argue all reasonable inferences from evidence
in the record. It is unprofessional conduct for the prosecutor
intentionally to misstate the evidence or mislead the jury as to the
inferences it may draw.

(b) It is unprofessional conduct for the prosecutor to express his
personal belief or opinion as to the truth or falsity of any testimony
or evidence or the guilt of the defendant.

(c) The prosecutor should not use arguments calculated to inflame the passions and prejudices of the jury.

(d) The prosecutor should refrain from argument which would divert the jury from it's duty to decide the case on the evidence, by injecting issues broader than the guilt or innocence of the acused under the controlling law, or by making predictions of the consequences of the jury's verdict.

In the instant case, appellant contends the prosecutor adversely expressed his personal opinion regarding defense's trial strategy in the following portion of is closing argument: (N.T. 6/10/92):

"MR. MC MONAGLE BROUGHT IN THE--MR. LANDIS... THAT SAID HE CUT THE DEFENDANT, BUT LET'S ROLL BACK THE TAPE, CLEAR THE SMOKE... YOU KNOW THOSE GUYS THAT ARE ON THE STREET CORNER?... THE GUYS THAT HAVE THE PEAS, THREE SHELLS, THE THREE CARDS,... AND THEY MOVE THEM BACK AND FOURTH, AND YOU,RE SUPPOSED TO GUESS WHERE IT IS... THERE'S USUALLY A SHIELD, THEIR GUY COMES, YEAH IT'S RIGHT THERE, PEAS RIGHT THERE... OKAY, THIS GUY WON $50.00.
THEN THEY'VE GOT THIS GUY FROM NEBRASKA OR, IN MY CASE, FROM THE POCONOS. AND HE STARTS MOVING THE SHELLS AROUND, OR CARDS, OR WHATEVER IT IS. I GOTTA BET. I KNOW WHERE IT'S AT. I SAW THE GUY PUT IT THERE. ALL OF A SUDDEN SOMEBODY HITS SOMEBODY OR THERE'S A FRACAS, THEY START ARGUING, I LOOK BACK, NOW WHERE'S THAT CARD? IT'S RIGHT THERE. THAT'S WHERE I SAW THE DOGGONE THING. I KNOW I SAW IT THERE. GUY TAKES THE SHELL UP, PEA'S GONE. DAMN. I KNOW I SAW THAT PEA THERE.
WHAT HAPPENED? I LISTENED TO THIS FRACAS OVER THERE, MOTHER THIS, MOTHER THAT. THIS GUY CHANGED THE PEA ON ME. KEEP YOUR EYE ON THE BALL." (P.P. 46-48.)

Appellant contends, there was no evidence to base the aforecited argument on. And that this argument was improper as it implied that the defense's presentation of Mr. Jackie Landis as a rebuttal witness to the Commonwealth's motive theory, was a team hustle, hoax, and/or scam to blow smoke over what the prosecutor alleged to be the truth regarding motive.    Appellant contends this improper argument was highly prejudicial in that itwas tantamount to telling the jury that the appellant defense counsel, and Mr. Landis were working together to deceive them from the truth, just as city street hustlers work in teams

to deceive people out of their money and property. And if the jury

believed the defense had presented Mr. Landis to deceive them, then

they would naturally conclude as a result, that appellant must in fact

be guilty. Hence, such argument prohibited the jury from properly

weighing the evidence. That of which prejudiced appellant and deprived

him due process and a fair trial. COMMONWEALTH V. GREEN, 611 A.2d 1294

(PA. Super. 1992);Stating:

"THE COURT HAS ESTABLISHED THAT THECONDUCT OF THE PROSECUTOR AT
CLOSING ARGUMENT IS CIRCUMSCRIBED BY THE CONCERN FOR THE RIGHT OF A
DEFENDANT TO A FAIR AND IMPARTIAL TRIAL. WE HAVE HELD THAT A
PROSECUTOR'S EXPRESSION OF PERSONAL OPINION REGARDING A DEFENDANT'S
GUILT, CREDIBILITY, OR STRATEGY IS PREJUDICIAL AND AMOUNTS TO
REVERSIBLE ERROR." At PA. 1297.

Appellant further contends that the aforecited argument by the

prosecutor wasan improper attack on the credibility of defense witness

Jackie Lndis.

Amongst other things, the prosecutor stated the following:

"...THERE'S USUALLY A SHIELD, THEIR GUY COMES, YEAH IT'S RIGHT
THERE...OKAY. THIS GUY WON $50.00..."
See (P. 21 of this brief, or N.T. 6/10/92, P. 47)

Appellant contends that the prosecutor's above statement was

inference to Mr. Landis, and that it implied Mr. Landis was shield,

which was equivalent to telling the jury that his testimony was

fraudulent. And that such conduct was in direct violation of Section

5.8, of the A.B.A. standards (A) & (B).

Appellant contends that no objection was made, nor was there a

specific instruction to disregard the prosecutor's comment. The case was

close, Mr. Landis's testimony was vital to appellant's defense, and if

not for the prosecutor's improper comments discrediting Mr. Landis's

testimony, the jury may have found the appellant had no immediate

bad blood with Mr. King, thus had no reason to kill him, and returned

a different verdict. Appellant contends that due to the prejudicial

effects of the prosecutor's improper comments and the following cases,

his conviction should be reversed. See: COMMONWEALTH V.GREEN, 611 A.2d

At 1297 (PA. Super. 1992); U.S. V.ZEHRBACH, 47 F.3d 1252 (3rd Cir.1995)

"THE PROSECUTOR IMPROPERLY APPEALED TO THE COMMUNITY INTEREST OF TH
JURORS AND DIRECTED THEIR FOCUS TOWARDS ENDING A SOCIAL PROBLEM BY
CONVICTING APPELLANT."

Appellant contends that such error was committed through the

following remarks by the prosecutor in closing summation; pertinent

portions (N.T. 6/10/92);

"DOES IT OCCUR TO YOU NO POLICE ARE CALLED? DOES IT OCCUR YOU
NOBODY SEES ANYTHING? DOES IT OCCUR TO YOU THAT THE BODY'S FOUND THE
NEXT DAY?..... DOES IT OCCUR TO YOU THAT MANY PEOPLE LIVE RIGHT THERE?
DOES IT OCCUR TO YOU THAT THE INFORMATION THAT'S RECEIVED FROM PEOPLE
WHO DON'T WANT TO GIVE THEIR NAME? DOES IT OCCUR TO YOU, WHY? BECAUSE
OF FEAR AND REVENGE.   THERE ARE PEOPLE IN THE ABBOTTSFORD PROJECT OR
HOMES THAT HAVE NOTHING TO DO WITH THIS CASE, THAT ARE MORE THAN DECENT
PEOPLE, THAT ARE LIKE MY MOM, LIKE MY GRANDMOM, THAT ARE LIKE MY AUNT,
THAT ARE LIKE MY SISTER, MY OLDER BROTHERS. THEY JUST HAPPEN TO LIVE IN
ABBOTTSFORD. BUT WHAT REIGNS AT ABBOTTSFORD? FEAR."
(P.P. 52-53)

*     *     *     *     *

(P.P. 69 At 19___)

Appellant contends that because no police were called, because

Mr. Kings body wasn't found until the next day, that the information

that was received, was from people who didn't want to give their names,

were all irrelevant to the facts and issues of the case regarding

appellant's guilt or innocence. And that it was improper and highly

prejudicial for the prosecutor to tell the jury that it's because of

"fear and revenge," in that the jury would naturally conclude that appellant was the author of such fear and revenge, which was the intended insinuation.    Appellant contends that it was not only improper for the prosecutor to refer to residence of the Abbottsford project whom had nothing to do with this case, but it was also improper and prejudicial for the prosecutor to express his personal opinion by stating that they were "More that decent people,"compare them to the likes of his own "MOM, GRANDMOM, AUNT, SISTER, AND OLDER BROTHER," and then tell the jury that these residence live under a reign of fear. In that the jury would naturally conclude that appellant was a major factor, if not the author of the said reign of fear. And that such an argument and inference would inescapably appeal to the jury's sympathy for these residence, and that the jurors may be persuaded by such appeals to believe that, by convicting this appellant, that they will be assisting in the eradication of the alleged reign of fear, which prejudiced appellant thus, deprived him due process and a fair trial. See; U.S. V. JOHNSON, 968 F.2d 768 (8th Cir. 1992) (Reverse and remanded for a new trial in light of the tenuous nature of the evidence and lack of curative instruction, combined with the fear and concern attended upon the National drug problem). In COMMONWEALTH V.GREEN, 611 A.2d at 1297;

As Mr. Justice Nix has stated for this Court.

"THE DETERMINATIN OF GUILT MUST NOT BE THE PRODUCT OF FEAR OR VENGEANCE BUT RATHER INTELLECTUALLY COMPELLED AFTER A DISINTERESTED, IMPARTIAL AND FAIR ASSESSMENT OF THE TESTIMONY THAT HAS BEEN PRESENTED." Citing: COM. V. HARVELL, 485 PA. 406, 411, 327 A.2d 27, 30 (1974).

The jury must not be diverted by statements appealing to its emotions or which may lead the jury away from its responsibility to resolve the case on the basis of the facts presented. See; COMMONWEALTH V. GILMAN, 470 PA. 197, 368 A.2d 253 (1977)

COMMONWEALTH V. HARVELL, 485 PA. 406, 327 A.2d 27 (1974);

COMMONWEALTH V. LIPSCOMB, 455 PA. 525, 317 A.2d 205 (1974).

Appellant contends this improper argument and appeal to the jury

continued in the following portions by the prosecutor;

(N.T. 6/10/92, P.P. 69 At19-P.71)

"DURING ALL THAT TIME, PRIOR TO THE APPREHENSION, DID YOU HEAR THE
DEFENDANT COME IN, SAY HE DIDN'T DO IT? JACKIE LANDIS COME IN, SHERRIE
BRADLEY'S A LIAR? NO. I SUGEST TO YOU, LADIES AND GENTLEMAN, THAT HE
FELT THAT HE COULD WALK IN THAT PROJECT WITH HIS BUDDIES, AND HE KNEW
THERE WAS THIS WARRANT FOR HIS ARREST FOR MURDER. JUST THINK ABOUT IT.
PUT IT IN CONTEXT. COULD YOU KNOW THAT THERE'S A WARRANT FOR MURDER AND
JUST WALK THROUGH YOUR NEIGHBORHOOD? WHAT ARE YOU THINKING? YOUR
THINKING WHAT? NOBODY'S GOING TO DO NOTHING TO ME. WHO'S GOING TO TELL
ON ME? WHO'S GOT THE NERVE? WHO CAN COME IN HERE AND SAY ANYTHING ABOUT
ME? WHO'S GOING TO TELL ON JAMES SAMPLE?
IT'S 6:00 IN THE AFTERNOON, AND--IN THE EVENING--HE'S WALKING
THROUGH HERE. THERE'S A MURDER WARRANT FOR HIM. HE KNOWS IT. THEY'VE
GONE BY EVERYBODY'S HOUSE THAT HE KNOWS IN TWO MONTHS, BUT HE FEELS AS
THOUGH HE CAN GO TO THOSE PROJECTS. WHY? DO YOU KNOW THE PERSON TO CALL?
DO YOU KNOW THE NAME? AND AGAIN, THIS IS NOT A PUT-DOWN TO ANYBODY IN
THE ABBOTTSFORD HOMES.    I'M NOT SUGGESTING THAT THIS AIN'T REAL,
BECAUSE THIS IS REAL. MR. McMONAGLE SAY'S THIS ISN'T T.V., AND THE JUDGE
SAY'S THIS IS NOT T.V. THIS IS REAL. THIS IS SO REAL THAT A MAN IN DEAD
AND THAT ANOTHER GUY CAN JUST THUMB HIS NOSE AT THE SYSTEM. THAT'S HOW
REAL THIS IS. THIS IS SO REAL THAT YOU ONLY HAVE A YOUNG GIRL COME IN
HERE. BUT HOW MANY PEOPLE DO YOU THINK HEARD THOSE SHOTS? HOW MANY.
PEOPLE DO YOU THINK HEARD THOSE SHOTS? HOW MANY PEOPLE DO YOU THINK
WALKED BY CALVIN KING? YOU KNOW WHAT CALVIN KING'S MISTAKE WAS? CALVIN
KING'S MISTAKE WAS AFTER 20 SOME YEARS IN THE SERVICE, HE CAME HOME.
IF A GUY DID SOMETHING TO YOU 20 YEARS AGO, 30 YEARS AGO--I WAS IN THE
SERVICE IN THE 60'S--SOMEBODY SAID SOMETHING TO YOU, YOU GOT IN A FIGHT
WITH THEM. SOME GUYS CARRY KNIVES.    CALVIN KING CAME HOME TWENTY YEARS
LATER. THINGS ARE CHANGED, TURF HAD CHANGED, THE WORLD HAD CHANGED. YOU
DON'T FRONT ON ANYBODY ANYMORE. SOME OF YOU WON'T REMEMBER THAT WORLD
BECAUSE YOU'RE YOUNG. THE WORLD HAS CHANGED SINCE THEN. CALVIN KING CAME
HOME AND TOOK A KNIFE AND CHALLENGED A GUNFIGHTER. HE CAME UP DEAD.
THAT'S WHAT THAT'S REALLY ABOUT. CALVIN CUT HIM IN JUNE, AND CALVIN
WASN'T THE KIND OF GUY, OBVIOUSLY, TO BACK DOWN. BEEN TO THE NAM, WAS A
VETERAN, HE PUT HIS TIME IN, WASN'T GOING TO LET SOME YOUNG ROUGH PUSH
HIM AROUND."    (P.P. 69 At 19-P. 71).

*    *    *    *    *

"I AGREE WITH MR. McMonagle about one thing. YOU ARE THE SYSTEM NOW AND I SUGGEST TO YOU THAT YOU SAY, YOU KNOW, ENOUGH IS ENOUGH. THIS HAS GONE TOO FAR. THIS MAN, NOT SOMEBODY ELSE, THIS MAN HAS TO ANSWER FOR THE LIFE HE TOOK. AND COME BACK AND TELL HIM THAT WE FIND YOU GUILTY." (P.P. 72 At 21-P.73 At 4).

Appellant contends that such argument was highly improper and prejudicial in that it was tantamount to telling the jury that, the residence of Abbottsford project were in grave fear of appellant, appellant knew such, and was of mindset, as he walked through this neighborhood, that nobody was going to do anything to him, or tell on him, that nobody in Abbottsford project had the nerve to, to come here and say anything about him, (meaning: come in to Court and testify against him).    Appellant contends, the prosecutor's statement that,..

"THIS IS SO REAL THAT A MAN IS DEAD AND ANOTHER GUY CAN JUST THUMP NOSE AT THE SYSTEM. THAT'S HOW REAL THIS IS.,"

was improper and highly prejudicial in that it implied appellant possessed no regard for life or the legal system.

Appellant contends that directly following his aforcited statement, the prosecutor stated, "THIS IS SO REAL THAT YOU ONLY HAVE A YOUNG GIRL COME IN HERE. BUT HOW MANY PEOPLE DO YOU THINK HEARD THOSE SHOTS? HOW MANY PEOPLE DO YOU THINK HEARD THOSE SHOTS? HOW MANY PEOPLE DO YOU THINK WALKED BY CALVIN KING?,"

which appellant contends was improper and highly prejudicial in that it was not only an emotional appeal to the sympathy of the jury but, in the context of the prosecutor's over all argument as aforcited, it is more likely than not that the jury concluded that the prosecutor actually possessed information from people who heard those shots, and or walked by Mr. king's body but were in fear of appellant, and that's why they; the Commonwealth only have a young girl come in and testify against him. Appellant contends that each of the aforcited instances of the

prosecutor's arguments together constitutes an emotional appeal
calculated to persuade the jury to decide the case on other than the
facts before it, and that the improper suggestions, inferences, and/or
insinuations therefore prejudiced appellant's right to a fair trial and
due process of law. See: Johnson, 968 F.2d 770-71; Bricker, 487 A.2d 35
-54; Green, 611 A.2d 1279 (PA. Super. 1992).

### THE PROSECUTOR COMMENTED ON THE NON-TESTIFYING DEFENDANT'S/APPELLANT'S COURTROOM BEHAVIOR.

Appellant contends that the prosecutor committed prejudicial
misconduct by commenting adversely on his Corutroom demeanor in the
following instance of the prosecutor's closing:

"I'M NOT SUGGESTING THAT THIS AIN'T REAL, BECAUSE THIS IS REAL.
MR. Mc MONAGLE SAYS THIS ISN'T T.V., AND THE JUDGE SAYS THIS IS NOT T.V.
THIS IS REAL. THIS IS SO REAL THAT A MAN IS DEAD AND ANOTHER GUY CAN
JUST THUMB HIS NOSE (1) AT THE SYSTEM. THAT'S HOW REAL THIS IS."
(N.T. 6/10/98, P. 70 At 18-23)

Appellant contends that the prosecutor's comment was improper and
prejudicial for the following reasons, Federal Rules of Evidence 404(A)
prohibits the introduction of evidence of the accused solely to prove
guilt. The prosecutor's remarks in effect did this by suggesting to the
jury that appellant's fidgeting of his nose was relevant apparently for
the purpose of showing that he was of bad character in that his actions
reflect total disregard for life and the law. when in all actuality,
appellant's Courtroom behavior off the witness stand was not only
legally irrelevant to the question of his guilt of the crimes charged,
but his actions were innocent.

Footnote (1)

Appellant admits that when disturbed, anxious, and/or in
contemplation, he has a slight habit of fidgeting with his nose.

The appellant had a Fifth Amendment right not to be convicted except on

the basis of evidence adduced at trial. He had a Sixth Amendment right

to a trial by jury.... In tandem, he had a right to a jury trial at

which, if he elected not to testify, the fact of his presence and his

non-testimonial behavior in the Courtroom could not be taken as evidence

of his guilt. Hence, the prosecutors remarks violated those rights.

There were no objections, no curative instruction, and being the case

was close, it cannot be said that the prosecutors remarks did not

prejudice appellant by influencing the jury adversely to him and

deprived him a fair trial. See: <u>U.S. V. Schuler</u>, 813 F.2d 978 (9th Cir.

1987), <u>United States V. Carroll</u>, 678 F.2d 1208 (4th Cir. 1982).

<u>THE PROSECUTOR IMPROPERLY STIGMATIZED THE APPELLANT AS A "GUNFIGHTER"
AND A "YOUNG ROUGH" IN HIS CLOSING SUMMATION TO THE JURY.</u>

Appellant contends that he was referred to by the aforementioned

epithets in thefollowing portion of the prosecutor's closing summation,

"CALVIN KING CAME HOME TWENTY SOME YEARS LATER. THINGS ARE CHANGED,
TURF HAD CHANGED. YOU DON'T FRONT ON ANYBODY ANYMORE. SOME OF YOU WONT
REMEMBER THAT BECAUSE YOU'RE YOUNG. THE WORLD HAS CHANGED SINCE THEN.
CLAVIN KING CAME HOME AND TOOK A KNIFE AND CHALLENGED A GUNFIGHTER. HE
CAME UP DEAD. THAT'S WHAT THAT'S REALLY ABOUT. CALVIN CUT HIM IN JUNE,
AND CALVIN WASN'T THE KIND OF GUY, OBVIOUSLY, TO BACK DOWN. BEEN TO THE
NAM, WAS A VETERAN, HE PUT HIS TIME IN, WASN'T GOING TO LET SOME YOUNG
ROUGH PUSH HIM AROUND."
(N.T. 6/10/92, P. 71 At 11-23).

Appellant contends that the aforcited statements were improper and

prejudicial in that there was no evidence that the appellant ever had

possession of a gun, or evidence of any prior criminal adjudications

for use of firearms. The prosecutor's reference to appellant as a

"GUNFIGHTER," given in the context of his argument, was equivalent to

calling appellant a cold blooded killer. In doing so, the prosecutor

interjected his personal belief in the guilt and character of a man who was supposed to enjoy the benefit of presumption of innocence. It is highly likely that the jury concluded from such statements, that appellant was a known gunslinger. The prosecutor also referred to appellant as a "YOUNG ROUGH," which in it's context, was a interjection of the prosecutor's personal opinion of the guilt and bad character of the appellant. And in the context of his argument, the prosecutor clearly implied that appellant was attempting to bully Mr. King, and that Mr. King was killed as a result of standing his ground against (APPELLANT) this gunfighter, and young rough.

"THE PROSECUTOR SHOULD NOT USE ARGUMENTS CALCULATED TO INFLAME THE PASSIONS OR PREJUDICES OF THE JURY"

STANDARDS 5.8(c), A.B.A. standards for the Prosecution Function. See: Bricker, 487 A.2d At 353, U.S. V. Diloreto, 888 F.2d At 999, holding that a prosecutor's remarks  regarding the defendant's guilt.... if not based on information adduced at trial, requires reversal per-se.(3rd Cir. 1989), Also See U.S. V. Zehrbach, 47 F.3d At 1266-67, (3rd Cir. 1995), Com. V. Scarfo, 611 A.2d 242, At 283 (PA. Super. 1992) Citing: Com. V. Lipscombe, 455 PA. 525, 528, 317 A.2d 205 (1974).

In the instant case, appellant was vividly painted before the jury by the arguments, statements, and inferences of the prosecutor as being a "BAD MAN," an offense nowhere defined in title 18. In Scarfo, the Court stated:

"IT IS ONE THING FOR A DEFENSE ATTORNEY TO ATTACK A WITNESS WITH CERTAIN DEBASING CLAIMS, BUT IT IS ERROR FOR THE PROSECUTOR WITH AUTHORITY OF THE COMMONWEALTH TO ATTACK A PERSON STANDING ACCUSED. A JURY CAN SORT OUT THE TRUTH WHEN WITNESSES ARE ASSAILD BY SUCH REMARKS. WHERE DEBASING EPITHETS ARE HURLD AT THE ACCUSED, HOWEVER, THE JURY BECOMES INDELIBLY MARKED OR PREJUDICED TO THE POINT WHERE IT'S OBJECTIVE SEARCH FOR THE TRUTH BECOMES DIFFICULT, IF NOT IMPOSSIBLE.

JUSTICE FORBIDS US FROM TREATING THESE DEFENDANTS DIFFERENTLY FROM ANY OTHER PERSON WHO STANDS ACCUSED OF A CRIME. INDEED, IF ANY CITIZEN STOOD ACCUSED OF A CLEAR-CUT VIOLATION OF RETAIL THEFT AND WERE DEGRADE AND DEHUMANIZED AS THESE DEFENDANT'S WERE, NO JUDGE WOULD FEEL A PANG O REGRET IN REVERSING SUCH A CONVICTION. WHERE THE DEFENDANTS ARE AS NOTORIOUS AS THESE, HOWEVER, WE BECOME TROUBLED BY SUCH A DECISION. NEVERTHELESS, THIS SENSE OF CONCERN DOES NOT WARRANT SHRINKING OUT DUTY TO DO JUSTICE. THESE IDEALS, THE FOUNDATION OF OUT CRIMINAL JUSTICE SYSTEM, ARE MEANINGLESS IF NOT APPLIED EVENHANDEDLY.

IT IS THE ONUS OF EVERY COURT IN THIS COMMONWEALTH TO DO JUSTICE-WHAT IS LEGALLY CORRECT-NO MATTER HOW PAINFUL THAT MAY BE...."

Id. 611 A.2d At 284 (PA. Super. 1992.)

Subsequently, appellant contends that he was not treated with a fundamental fairness, the fundamental fairness as stated in Rispo, infra, and because it is more likely than not, that appellant was prejudiced by the prosecutor's remarks in the aggregate. See Bricker, 506 PA. 571, 487 A.2d 346 (1985). Such remarks in their number and egregiousness could easily taint the jury's ability to reach a verdict objectively, thus requiring reversal of conviction. The Honorable Courts of Pennsylvania have long ago held that it was reversible error to allow the prosecutor to point to a Murder defendant in his closing argument and refer to him as a cold blooded killer, as did the prosecutor in the instant case. Com. V. Capalip, 322 PA. 200, 185 A. 203 (1936).

### THE PROSECUTING ATTORNEY REFERRED TO INADMISSIBLE AND PREJUDICIAL EVIDENCE IN CLOSING SUMMATION TO THE JURY.

Appellant submits that the prosecuting attorney stated the following during his closing argument:

"SHE SAYS THAT HER MOTHER SAID, YOU HAVE TO LEAVE THE PROJECTS FOR YOUR SAFTY." (N.T. 6/10/92. P. 60 At 8-10.)

Appellant contends that the aforecited statement was in reference to the testimony of Commonwealth witness Sandra Scott. That of which

was previously objected to, argued upon between counsels in the
Judge's chambers and eventually ruled inadmissible as the Court
cautioned, that what the witness said that her mother allegedly said is
pure hearsay, and it must play no part in their deliberations. See
(N.T. 6/3/92. P.P. 45-56, or specifically P. 56.)

Appellant was not charged with intimidating Scott, no evidence was
presented before the jury that she was ever intimidated by appellant or
anyone from the Abbottsford project, or that her life was in jeopardy b
continuing to live there, the prosecutor's reference to the inadmissibl
hearsay evidence, he conveyed the exact opposite impression to the jury
that of which prejudiced appellant and deprived him due process and a
fair and impartial trial. See: A.B.A. standards for the Prosecution and
Defense Function Sec. 5.8., (A)(B)(C) and (D).

Appellant contends that the prosecutor misstated the inadmissible
evidence, and in doing so, he "deliberately" violated the clear ruling
of the Court and created the inescapable and false impression in the
mind of the jury that Sandra Scott's life was in eminent danger by way
of appellant and/or his friends and family who resided in the
Abbottsford project because she was to stand as a witness against him.
And that it is highly likely that such did play a part in the jury's
deliberation and influenced it's verdict adversely toward appellant.
And that as a result, appellant should be awarded a new trial. See:
Com. V. Bricker, 487 A.2d 346 (PA. 1985), U.S. V. Johnson, 968 F.2d
768, 770 (8th Cir. 1992). And United States V. Harris, 542 F.2d 1283,
1308-09 (7th Cir. 1976).

- 41 -

THE PROSECUTOR IMPROPERLY ATTACKED THE CREDIBILITY OF A CRUCIAL DEFENSE
WITNESS.

The prosecuting attorney submitted the following argument to the

jury regarding defense witness Denise Ross;

"LET'S LOOK AT DENISE ROSS, DENISE ROSS GIVES A STATEMENT. SHE GOES
TO MR. McMONAGLE'S OFFICE, AND THAT WAS ON--PARDON MY BACK, PLEASE,
LADIES AND GENTLEMEN. THAT WAS ON MAY THE 19th, 1992, JUST ABOUT THE
TIME THAT THIS CASE WAS CALLED FOR TRIAL. HOW DID MISS ROSS GET THERE?
POSSE, OR SOMEBODY TOOK HER? SOME FRIEND OF THE DEFENDANT'S. THE
GIRLFRIEND OF THE DEFENDANT HAS SPOKEN TO HER EARLIER SO SHE CAN GET
THE STORIES, ALL THE LIES STRAIGHT AND PUT IT IN CONTEXT."
"SHE ORIGINALLY SAYS WHAT? HO, I DON'T KNOW THE DEFENDANT, I DON'T
KNOW ANY OF HIS FRIENDS, I DON'T KNOW WHAT HE DOES. WELL, SHE LIVED
NEXT DOOR TO HIM FOR TWO YEARS. WE'RE NOT TALKING ABOUT THE NEXT
BUILDING, BECAUSE THESE ARE APARTMENT BUILDINGS. WE'RE TALKING ABOUT
NEXT DOOR, AS IN THE NEXT APARTMENT FOR TWO YEARS, BUT DOESN'T KNOW THE
DEFENDANT, DOESN'T KNOW ANYTHING ABOUT HIM, DOESN'T KNOW HIS FRIENDS.
AND HOW DID SHE GO TO THE OFFICE? WITH THIS MYSTERIOUS FRIEND, WHO ALSO
BRINGS HER TO COURT. AND THEN WHAT DOSE HE DO? HE'S GONE, PUT IT IN
CONTEXT."
(N.T. 6/10/92. P.P. 57-58)

Appellant contends the prosecutor's argument was an improper attack

on the credibility of miss Ross in that; (1) while there may or may not

have been sufficient evidence at least to argue the inference that a

friend of appellant's transported miss Ross to defense counsel's office,

it could not be stated to the jury as a fact known to the prosecutor,

and in that there was no such evidence presented, (2) There was no

evidence nor a legal inference to be drawn that appellant's girlfriend

spoke to Miss Ross prior to trial so that Miss Ross could get the

stories, all the lies straight to put into context, (3) There was no

evidence or legal inference to be drawn that Miss Ross was not being

truthful about not knowing appellant, his friends or family members.

Miss Ross testified at (N.T. 6/9/92. P.P.47-48, and P. 53), that she saw

appellant but never actually knew or socialized with him, hence, did not

know his friends or family. And (4) the prosecutor misstated the facts

by arguing that Miss Ross lived directly next door to appellant for two
years, when in fact, Miss Ross testified at (N.T. 6/9/92. P.P. 46-47.),
That she lived on Defense Terrace At 3103 APT. J., And that the
prosecutor himself had previously presented evidence that appellant
allegedly resided At 3201 APT. G. Defense Terrace (N.T.6/4/92.P.P.34-35

Appellant contends that Denise Ross was a crucial witness for the
defense, in that she was the only person present with Bradley at the
time the incident was alleged to have occurred, thus, Ross rebutted
Bradley's testimony as to whether they did or didn't see anything on the
night of the incident, leaving the jury to decide who they were going to
believe out of the two. And had it not been for the prosecutor's
improper attack upon the credibility of Miss Ross, by implying that her
testimony was under the duress of an alleged friend of appellant's and
his girlfriend, hence, was a lie, the jury may have very well properly
credited Miss Ross's testimony and returned a different verdict.
Especially, in light of the scant evidence presented by the Commonwealth
Nevertheless, the jury was effectively prevented from properly evaluating
the truthfulness of Miss Ross, that of which prejudiced appellant and
deprived him a fair trial. See: Bricker, 487 A.2d 346, 350,(PA. 1985),
U.S. V. Zehrbach, 47 F.3d 1252 (3rd Cir. 1995).

Appellant contends that the aforecited argument also constituted an
improper and prejudicial expression of the prosecutor's personal opinion
concerning the guilt of the appellant, in that the prosecutor's implied
acts of the appellant's girlfriend and alleged friend of his, the jury
would naturally conclude the consciousness of guilt on appellant's
part.

Appellant contends that it is likely than not, that he was
prejudiced by the prosecutor's misconducts in the aggregate, in that
such error and remarks in their number and egregiousness could easily
taint the jury's ability to reach a verdict objectively. See; <u>Bricker</u>,
and <u>Zehrbach</u>, thus, appellant should be granted a new but, fair and
impartial trial.

THE TRIAL COURT COMMITTED JUDICIAL ERROR IN RULING THE LETTERS WRITTEN
BY COMMONWEALTH WITNESS WE'RE IRRELEVANT, OVER DEFENSE COUNSEL'S
OBJECTION.

During the course of the trial, the defense confronted Commonwealth
witness Sherrie Bradley with two letters written by her and sent to the
appellant while he was in costudy awaiting trial on the matter at hand.
Under oath, Bradley committed perjury in denying such, and that she had
sent appellant two photos of a young male child claiming that the child
was her's, and accusing appellant of being it's father. Subsequently,
as the truth came to light, the jury was made aware of Bradley's
falsehoods through a stipulation between counsels. Hence, prior to the
stipulation before the jury, the trial Court ruled that Bradley's
letters had no further relevancy to the case. Defense counsel expressed
his concerns that one of the letters may in fact be relevant and that he
desired to bring such to the awareness of the jury. And in so many
words, the Court denied such.
(N.T. 6/9/92, P.P. 4-8, or specifically P. 7.)

Appellant contends that the trial Court abused it's discretion in
ruling that Bradley's letters had no further relevancy to this case, in
that at least one of the two letters were relevant in regards to
Bradley's cause to be biased, as well as to rebut the charge and/or
implications that she was in fear of the appellant, in that on the

second page of at least one of those letters, she clearly stated "THAT SHE WAS ANGRY AT THE APPELLANT FOR NOT CALLING HER, AND THAT'S WHY SHE DIDN'T SEND ANY PICTURES OF THEIR SON." See; (DEFENSE TRIAL EXHIBITS D-2 & 3)

Appellant contends that disclosure of this was relevant under, United States V. Marzano, 537 F.2d 257 (7th Cir. 1976), Thompkins V. United States, 236 A.2d 443 A.L.R. 3d (D.C. APP. 1967), Especially, in light of appellant's girlfriend and son being present during trial. 3 J. Weinstein, Weinstein's Evidence 607-03, At 607-23 (1982). As such, the party should be afforded an opportunity to pursue all relevant lines of inquiry aimed at discovering and disclosing bias. United States V. Lay, 644 F.2d 1087, 1090 (5th Cir.); cert. denied, 454 U.S. 869, 102 S.Ct. 336, 70 L.Ed. 172 (1981). The jury could have reasonably concluded that Bradley's feelings toward appellant also illustrates that she becomes very upset when he doesn't give her the attention she desires, and such could have been the precise reason needed by the jury to believe why Bradley would fabricate testimony against appellant. Thus, as a result of an abuse of discretion by the trial Court, the appellant was deprived due process, a fair trial, and his conviction should be reversed.

TRIAL COUNSEL WAS CONSTITUTIONALLY INEFFECTIVE IN THE FOLLOWING REGARDS.

(A) Failing to interpose a timely objection and seek corrective action by the Court when the Commonwealth witness was persistent in giving false testimony, as previously cited and argued on page 22-23 of this brief. Also See; United States V. Harris, 498 F.2d 1164, At 1170-1171 (3rd Cir. 1974).  Appellant contends that he had a fundmental right to a fair trial free from false testimony, FAY V. NOIA, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963);

- 45 -

JOHNSON V. ZERBST, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1939),
And trial counsel's failure to ensure his client enjoyed this right or
at least seek to minimize the prejudicial effect of the false and
misleading testimony, deprived appellant of effective assistance of
counsel thus, A trial that could hardly be considered fair and impartial
trial.

   (B) Failing to object and seek specify the relevancy of Bradley's
letters to the trial Court, as previously cited and argued on page_____
of this brief.

   (C) Failing to object to the improper, prejudicial, and inflammatory
remarks, comments, and arguments by the prosecutor as aforecited in this
brief.

Issue

   FAILURE TO RAISE AND PRESERVE MERITORIOUS ISSUES AT TRIAL, POST
   -TRIAL AND ON DIRECT APPEAL, AND DID THE POST CONVICTION COURT
   ERROR IN DENYING AN EVIDENTIARY HEARING AND PROPER RELIEF?

   Appellant contends that trail counsel was constitutionally
ineffective under the United States constitution 6th Amendment and
Pennsylvania Constitution Article 1 Section 9, for failure to object to,
raise, and preserve the herein meritorious issues at Pre-trial, trial,
Post-trial and Direct appeal. Appellant contends the Post Conviction
Collateral Relief Court additionally abused its discretion to not grant
appellant an evidentiary hearing regarding arguable claim of ineffective
assistance of counsel, and this Court should either grant the appropriate
relief of a new trial or remand the case back to the lower Court for an
evidentiary hearing. See; Com. V. Kaufman, 392 A.2d 91, 94 (1991)
Allocatur denied, 600 A.2d 534 (1991).

Appellant contends whether counsel wanted to avoid interrupting the prosecutor and annoying the jury or because he wanted to avoid calling attention to the prosecutor's said conduct did not have a reasonable basis designed to advance appellant's interest, or protect his state and Federal rights. COMMONWEALTH V. BROWN, 436 A.2d 165, 167 (1981). See also, Com. V. Stanley, 632 A.2d 871, 872 (1993); Com. V. Lam, 684 A.2d 153 (PA. 1996); Strickland V. Washington, 466 U.S. 668 (1984).

Appellant contends that the P.C.R.A. Court abused its discretion in dismissing appellant's petition because the underlying claims were of arguable merit and effected the truth determining process that no relied on adjudication of guilt or innocence could be relied upon under the circumstances of the instant case.

Appellant contends that herein claims are of arguable merit and the three prong test in Strickland V. Washington, Supra, has been met and prejudice has been proven though the foregoing issues, errors, and arguments in this brief, and appellant has been denied due process and a fair trial and effective assistance of counsel, and there was no reasonable basis for counsel's action to effectuate appellants best interest. See; Com. V. Szuchon, 633 A.2d 1098 (1993).

Appellant contends that he did not knowingly and intelligently waive any of the herein issues and that the failure to object to and raise the issues prior to or during trial or on direct appeal could not have been the result of any rational strategy or tactical decision by counsel, therefore the P.C.R.A. Court abused its discretion in dismissing appellants petition. See; 42 PA.C.S. 9543 (b)(4).

Moreover appellant alleges that the allegations of error have not been waived, and if the allegations of error have been waived the waiver of the allegations of error during Pre-trial, trial, Post-trial and

direct appeal does not constitute a state procedure default barring Federal habeas corpus relief. See, <u>42 Pa. C.S.A. B9543 (a) (3).</u>

    Petitioner contends, however, waiver is avoided where claims regarding ineffective assistance of counsel are raised at the frist opportunity at which counsel whose ineffectiveness is challenged is no longer representing petitioner and, petitioner has raiesed those claims at the Post-Conviction Collateral Relief proceedings in which trial counsel (who was also direct appeal counsel) did not represent petitioner. See, <u>Commonwealth V. Griffin,</u> 644 A.2d 1167 (1994).

### VII. <u>Conclusion</u>

WHEREFORE, for the foregoing reasons petitioner moves thie honorable court to issue a writ of habeas corpus -- appoint counsel to represent the petitioner and conduct an evidentiary hearing on his issues presenting substantial complaints of constitutional violations.

Dated: /2-20-2000

Respectfully submitted,

*James Sample*

James Sample, Pro Se
SCI-FRACKVILLE
1111 Altamont blvd.
Frackville, Pa. 17931

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JAMES SAMPLE                          :           CIVIL ACTION
          v.                          :
                                      :
BEN VARNER, et al.                    :           NO. 00-3634        FILED SEP 1 4 2000

## ORDER

The petitioner filed a pro se motion seeking habeas corpus relief under 28 U.S.C. §2254. The petitioner is informed that it is essential that a habeas corpus motion include all potential claims for which a petitioner might desire to seek review and relief because a second or successive habeas corpus motion cannot be filed except under very specific and rare circumstances requiring certification by the Third Circuit Court of Appeals. The petitioner should inform the court immediately whether he wishes to proceed with the pro se motion or withdraw the pro se motion and file one new, all-inclusive habeas corpus motion within the one year time limit set by 28 U.S.C. §2244. If the pro se motion was filed within the one-year time limit, and that limit has expired or will expire within the next 119 days, the Court will grant petitioner 120 days from the date of this Order to file one new all-inclusive habeas corpus motion. It is ORDERED this 13 day of Sept 2000, that if no written notification of withdrawal is received within thirty (30) days of the date of this Order, the Court will proceed to decide the pro se motion as filed and captioned.

_____
EDMUND V. LUDWIG, J.

CLERK OF COURT